# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-046**

**Filing Date: July 31, 2020**

**No. A-1-CA-37352**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**KIMBERLY ANN LEDBETTER,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Released for Publication October 6, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Kimberly Ledbetter appeals from her convictions for residential burglary, contrary to NMSA 1978, Section 30-16-3(A) (1971); larceny, contrary to NMSA 1978, Section 30-16-1(B) (2006); and criminal damage to property (over $1000), contrary to NMSA 1978, Section 30-15-1 (1963). On appeal, Defendant raises the following challenges: (1) the State presented insufficient evidence to support Defendant's convictions for residential burglary, larceny, and criminal damage to

property; and (2) the district court fundamentally erred by providing the jury an incomplete instruction concerning accessory liability. We reverse.

## BACKGROUND

**{2}** Thomas Wulf owned the residential property at issue (the property), consisting of a house, a detached garage, and a guest house. Thomas resided at the property until 2008, following which he hired Sonny Candelaria, a handyman, to conduct repairs and renovations. Sonny intermittently worked at the property about once or twice a week, occasionally allowing a week to pass between his visits, and Thomas would periodically visit to check on the work's progress. From June through October 2013, however, Sonny had neither been to nor worked at the property. In October 2013, when Sonny arrived to continue the remodeling work, he discovered that "everything was kind of demolished," with several fixtures and appliances stolen and significant structural damage from the removal of items such as ceiling fans, electrical wiring, and air conditioning units. Sonny immediately informed Thomas, who called the police to report the burglary.

**{3}** A police sergeant from the Chaves County Sheriff's Office (CCSO) arrived to investigate the burglary at the property. The sergeant observed as many as three different shoe tracks and collected approximately sixteen items of evidence. Twelve of those items were submitted for DNA testing, including cigarette butts, soda cans, water bottles, and human excrement. Both male and female DNA were detected on the items, and Defendant's DNA matched the DNA found on three cigarette butts and three soda cans. Of those, one cigarette butt and one soda can were collected in the master bedroom, one cigarette butt in the southwest bedroom, and two soda cans and one cigarette butt in the laundry room.

**{4}** At trial, the sergeant testified that at a post-incident interview, Defendant admitted that she was a smoker, but stated that she was not in Roswell between April and October 2013. However, two officers contradicted Defendant's statement, testifying that they had contact with Defendant in Roswell on September 22 and October 1. The sergeant further testified that he did not see evidence that someone was living at the property, that he identified at least three different footprints, and that he found plastic casing and paper insulation on the floor from where someone spent time stripping the copper from the electrical wiring. On cross-examination, the sergeant indicated that he was unable to determine whether the burglary occurred over a period of time or all at one time, and that none of the stolen items had yet been recovered or linked to Defendant. The expert who conducted the DNA testing testified at trial and discussed in detail the results of the samples that matched Defendant. On cross-examination, the expert explained that the DNA evidence simply indicates that Defendant's DNA was on certain samples, but it cannot explain how or when the Defendant's DNA transferred onto the samples. Defendant did not present any witnesses or evidence, and the jury convicted Defendant of residential burglary, larceny, and criminal damage to property.

## DISCUSSION

## I.  Insufficient Evidence Supported Defendant's Convictions for Residential Burglary, Larceny, and Criminal Damage to Property

**{5}** Defendant argues that there was insufficient evidence to establish her convictions for residential burglary, larceny, and criminal damage to property. We agree and address each conviction in turn.

**{6}** In reviewing the sufficiency of the evidence on appeal, we view the evidence "in the light most favorable to the [s]tate, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. We must "determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *Id.* "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted). "While we cannot substitute our own judgment for that of the jury in weighing the evidence, . . . [we] ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted). Specifically, "we have a duty to assure that the basis of a conviction is not mere speculation." *Id.* ¶ 19 (internal quotation marks and citation omitted); *see* UJI 14-6006 NMRA (providing that a jury's "verdict should not be based on speculation, guess or conjecture"). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

### A.  Residential Burglary

**{7}** As to the charge of residential burglary, the jury was instructed that the State must prove beyond a reasonable doubt that (1) "[D]efendant entered a dwelling without authorization"; (2) "[D]efendant entered the dwelling *with the intent* to commit a theft or [c]riminal [d]amage to [p]roperty (over $1000) when inside"; and (3) "This happened in New Mexico on or about or between April 1, 2013 and October 7, 2013." (Emphasis added.) A "dwelling house" was defined as "any structure, any part of which is customarily used as living quarters." Moreover, for each of the three charges, the State was required to prove beyond a reasonable doubt that Defendant acted intentionally, and the instructions elaborated that "[a] person acts intentionally when she purposely does an act which the law declares to be a crime [and w]hether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances."

**{8}** Defendant does not dispute her unauthorized entry into the property, but she contends that "mere unauthorized entry does not lead to a reasonable inference of [her] intent to commit a felony or theft therein" as is required for burglary. At trial, the State presented evidence of Defendant's DNA found on cigarette butts and soda cans at the property, Defendant's statement that she was not in New Mexico during April to October 2013, and officers' testimonies regarding contact with Defendant in Roswell in late

September and early October 2013. The State contends that Defendant's DNA found on items "near areas of the residence in which extensive damage had occurred over necessarily protracted periods of time" and the Defendant's statement that she was not in New Mexico—despite testimony by officers stating otherwise—supports an inference of Defendant's "consciousness of her own guilt for her involvement in what had occurred during her unauthorized entry" on the property. We are unpersuaded.

{9}  Based on our review of the record, the evidence establishes only that Defendant entered the property without authorization. The State did not present sufficient evidence to establish, either directly or by circumstantial evidence, the specific intent required for a burglary charge—that Defendant entered the dwelling "*with the intent* to commit a theft or [c]riminal [d]amage to [p]roperty," such that a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction. *See Dowling*, 2011-NMSC-016, ¶ 20; *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (recognizing that "circumstantial evidence alone can amount to substantial evidence" and that intent is generally inferred from the circumstances). Defendant's statement, allegedly misleading the police about her whereabouts over the relevant period, does not clearly establish a "consciousness of her own guilt" as to the charged offenses. The statement could have suggested her "consciousness of guilt" as to the unauthorized entry, but in either case, mere speculation cannot form the basis of a conviction. *See Vigil*, 2010-NMSC-003, ¶ 19.

{10}  Here, the speculation inherent in this conviction is evident when considering the sergeant's testimony that he was unable to determine whether the burglary occurred over a period of time or all at once and that none of the stolen items had yet been recovered or linked to Defendant. Further, the charging period of the offense spans over six months, and despite investigations, the officers were unable to establish a time frame that placed Defendant at the property when the offenses occurred.

{11}  The State cites to *State v. Jennings* for the proposition that "[a]n unauthorized presence in a structure is evidence from which a jury could reasonably infer the necessary intent to commit a felony or theft therein." 1984-NMCA-051, ¶ 14, 102 N.M. 89, 691 P.2d 882. Defendant proposes that *Jennings* should be overruled or modified. We consider *Jennings* to be inapplicable because there were attendant circumstances in *Jennings* from which an inference of intent could be drawn, unlike the facts here. There, the defendants appealed convictions for possession of burglary tools and conspiracy to commit breaking and entering, and here Defendant appeals a conviction for residential burglary. *Id.* ¶ 1. The charges in both *Jennings* and our present case require specific intent—either demonstrating the intent to use the tools in committing a burglary or the intent to commit a felony or theft on the property, respectively. *Id.* ¶ 14; *see* UJI 14-1630 NMRA; UJI 14-1633 NMRA.

{12}  In *Jennings*, we held that there was sufficient evidence to prove specific intent based on the facts and the evidence presented regarding the defendants' actions and surrounding circumstances, allowing the jury to reasonably infer that the defendants intended to break into the gas station and commit a theft. *Jennings*, 1984-NMCA-051, ¶

14 ("The facts . . . regarding the defendants' actions and the surrounding circumstances, provide sufficient evidence from which a jury could infer that [the] defendants intended to break into the station and commit a theft therein. This is a reasonable inference."). There, officers testified at trial that they heard "metallic banging" coming from the back of the gas station (the scene of the crime), that "one defendant attempted to scale the [gas] station wall," that there were "fresh marks which appeared to be screwdriver marks . . . on the bathroom door, and [that] the padlock had been broken off the basement door[,]" and that the defendants were apprehended by officers with burglary tools on their persons. *Id.* ¶¶ 3-5, 12. In contrast to the evidence in *Jennings*, there is simply no comparable direct or circumstantial evidence here that leads to an inference of Defendant's intent to commit a theft or felony at the property. *Bowman v. Inc. Cty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133 ("An inference is more than a supposition or conjecture. It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." (internal quotation marks and citation omitted)).

**{13}**     Moreover, in *Jennings*, several officers arrived at the gas station close in time to the suspected burglary and apprehended the defendants on the scene. 1984-NMCA-051, ¶¶ 3-4. Here, however, Defendant was not apprehended at the scene as the suspected burglary took place. Instead, Defendant was apprehended after the burglary was discovered to have taken place sometime between April and October 2013, and only after her DNA was determined to be on cigarettes and soda cans left behind at the scene during that same time period. Although some of those cigarettes and soda cans were found near where copper wiring was stripped and near significant structural damage, such evidence alone does little to narrow the broad window within which that DNA evidence was left or tangibly link it to the occurrence of the underlying crimes. As well, some of the DNA samples linked to Defendant also contained DNA contributions from unknown persons. Absent more, the DNA evidence from Defendant found on discarded cigarettes and soda cans on premises that had been unoccupied in excess of six months cannot support a reasonable inference that Defendant intended to commit a theft or to criminally damage the property upon entry. In fact, Defendant's unauthorized entry could have occurred weeks or months before or after any burglary took place. There is simply no evidence that Defendant was present then, much less with the requisite intent. Our conclusion is further supported by the sergeant's testimony that the stolen property was neither recovered nor linked to Defendant in any manner.

**{14}**     What we have in this case is evidence of (1) Defendant's unauthorized presence on the property sometime within six months of the burglary; (2) stolen fixtures and appliances as well as structural damage at the property; (3) Defendant's statement that she was not in New Mexico during April to October 2013; and (4) officers' testimonies of contact with Defendant on September 22 and October 1. There is no evidence linking Defendant's presence to any theft or proving that Defendant was present during the burglary, or otherwise assisted or encouraged such burglary by others, except by speculation based on her DNA on cigarette butts and soda cans. Notably, there was no DNA evidence found on any burglary tools or plastic casing and paper insulation in the electrical wiring, nor fingerprints on the damaged areas of the property, nor eyewitness

testimony placing Defendant at the scene during the incidents, nor even any evidence connecting Defendant to the stolen items. *See* UJI 14-2823 NMRA ("Mere presence of the defendant, and even mental approbation, if unaccompanied by outward manifestation or expression of such approval, is insufficient to establish that the defendant aided and abetted a crime."); *see also* NMSA 1978, § 30-1-13 (1972). As such, for the jury to have reached the conclusions necessary to yield a guilty verdict as to the residential burglary charge, it necessarily had to speculate that Defendant's presence on the property established by Defendant's DNA on cigarette butts and soda cans was sufficient to satisfy the specific intent required here. While evidence of intent can be based on circumstantial evidence, we will not uphold a conviction based on mere speculation. *See Dowling*, 2011-NMSC-016, ¶ 20; *Flores*, 2010-NMSC-002, ¶ 19. Here, none of the evidence presented, individually or collectively, gives rise to any reasonable conclusion that Defendant had the intent to commit a felony or theft at the property. Therefore, we reverse Defendant's conviction for residential burglary.

## B.     Larceny and Criminal Damage to Property

**{15}**     A similar analysis follows regarding Defendant's convictions of larceny and criminal damage to property. The jury instructions for larceny required that the jury find beyond a reasonable doubt that (1) "[D]efendant took or carried away a battery, battery charger, two air conditioners, a stove, electrical wires, electrical parts, bathroom sink, toilet, plastic sawhorses, and a wheel barrow, belonging to another, which had a market value [of] over $2,500.00"; (2) "At the time she took this property, [D]efendant *intended* to permanently deprive the owner of it"; and (3) "This happened in New Mexico on or about or between April 1, 2013 and October 7, 2013." (Emphasis added.) To convict Defendant of criminal damage to property (over $1000), the State had to prove beyond a reasonable doubt that: (1) "[D]efendant *intentionally* damaged [the] property of another"; (2) "[D]efendant did not have the owner's permission to damage the property";(3) "The amount of the damage to the property was more than $1000.00"; and (4) "This happened in New Mexico on or about or between April 1, 2013 and October 7, 2013." (Emphasis added.)

**{16}**     The State contends that the jury received sufficient evidence to support the convictions for larceny and criminal damage to property, pointing to testimony from Thomas and Sonny regarding the condition of the residence before the incident(s) and the missing items including copper electrical wiring, fixtures, and appliances. The State emphasizes that soda cans and cigarettes with Defendant's DNA found close to areas where "labor-intensive damage" had occurred support the inference that such damage would have taken several days to accomplish and contends that such circumstantial evidence supports the verdicts. We disagree.

**{17}**     In our earlier residential burglary analysis, we held that the evidence presented at trial supported that Defendant entered the property without authorization, however, failed to prove the necessary specific intent. *See supra* ¶ 14. Both larceny and criminal damage to property also have comparable mens rea requirements. As to the larceny conviction, in particular, there was an insufficient basis from which the jury could infer

that Defendant "took or carried away" the enumerated items, and much less that she did so with the specific intent "to permanently deprive the owner" based on the evidence at trial. *See State v. Paris*, 1966-NMSC-039, ¶ 5, 76 N.M. 291, 414 P.2d 512 (explaining that the corpus delicti of larceny is not established by showing loss by the owner, access by the defendant, and the defendant's unexplained disappearance and rather that, where circumstantial evidence was sufficient to establish the corpus delicti of larceny, some element of subsequent possession in the defendant of the stolen property was present); *see also State v. Brown*, 1992-NMCA-028, ¶ 17, 113 N.M. 631, 830 P.2d 183 (noting that where there are other circumstances linking the defendant with a theft, possession of stolen property can support a larceny conviction).

**{18}**     Evidence that certain items and fixtures were missing from the property does not establish that Defendant took the property or assisted in the taking of property under an accomplice liability theory. The State effectively asked the jury to speculate that Defendant necessarily must have participated in taking and carrying away of the property or aided or encouraged another in taking the property because (1) the property had not been found; and (2) Defendant was the only unauthorized person identified to have been at the property at some unknown point in time during the lengthy charging period. *Cf. State v. Silva*, 2008-NMSC-051, ¶ 19, 144 N.M. 815, 192 P.3d 1192 (discussing that a conviction for tampering could not be sustained where the state effectively asked the jury to speculate that the defendant committed the overt act of hiding the murder weapon because it was never found). We will not uphold a conviction based on mere speculation; therefore, we conclude the evidence is insufficient for a larceny conviction.

**{19}**     Similarly, there was an insufficient basis from which the jury could infer that Defendant damaged property. Again, her mere presence or unauthorized entry to the property alone does not satisfy either the actus reus or the mens rea required for criminal damage to property. *See State v. Vargas*, 2016-NMCA-038, ¶ 33, 368 P.3d 1232 ("Generally, mere presence during the commission of the charged offense, even presence accompanied by mental approbation, is insufficient to infer the criminal intent required by the statute."). For the jury to reach a guilty verdict here, it had to infer that, based on testimony that there was structural damage to the property, Defendant "intentionally damaged [the] property of another" or "helped, encouraged or caused" another to damage to property, merely because she was present without authorization at some time during the six-month period. This is a clear example of the sort of impermissible speculation our caselaw disallows.

**{20}**     Given the complete lack of evidence directly linking Defendant to any criminal activity at the property, except by speculation based on her DNA on cigarette butts and soda cans discarded on the premises sometime within six months of the crimes for which she was convicted, we conclude that there was insufficient evidence to support Defendant's convictions for larceny and criminal damage to property beyond a reasonable doubt. Given our holding that there was insufficient evidence to uphold Defendant's convictions, we need not address Defendant's challenge to the accomplice liability instruction.

**CONCLUSION**

**{21}**  For these reasons, we reverse and remand to the district court to vacate Defendant's convictions.

**{22}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**