# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-010

Filing Date: March 30, 2021

No. A-1-CA-37314

**STATE OF NEW MEXICO,**

>     Plaintiff-Appellee,

v.

**FRANKLIN D. BEGAYE,**

>     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Certiorari Granted, December 27, 2021, No. S-1-SC-38797. Released for Publication March 22, 2022.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter M. Hart, III, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}**     Defendant Franklin Begaye appeals his convictions for non-residential burglary, contrary to NMSA 1978, Section 30-16-3(B) (1971); breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981); and possession of burglary tools, contrary to NMSA 1978, Section 30-16-5 (1963). On appeal, Defendant requests that we vacate his convictions for breaking and entering and possession of burglary tools and contends that (1) his convictions for burglary and breaking and entering violate his right to be free

from double jeopardy; and (2) there was insufficient evidence to support his conviction for possession of burglary tools. We affirm in part and reverse in part.

**BACKGROUND**

**{2}** Defendant was arrested on February 28, 2017, following a report of a break-in at Ram Signs, a business in Farmington, New Mexico. Testimony established that around 8:00 p.m. that night, Ram Signs co-owner Michael Mordecki heard a loud bang coming from the front of the building. Soon thereafter, Mr. Mordecki discovered that the front window had been smashed in and called the police. Officer Justin Nichols arrived at the scene, verified that the intruder was not in the building, and inspected the area. Inside the building, Officer Nichols observed a broken window, an overturned cash box, and disarray around an employee's desk. Nothing had been taken by the intruder, but the front office area had been rifled through. Outside the building, Officer Nichols noticed shoe prints leading to and from the nearby fence line, as well as an area where it appeared someone had crawled under the fence.

**{3}** Security footage provided by Monica Mordecki, also a co-owner of Ram Signs, revealed that the suspect was a male wearing light shoes, dark pants, and a dark jacket over a light hoodie. In searching nearby areas, Officer Nichols observed Defendant, who matched the description of the individual in the video, walking along Farmington's main street, and upon approach, Officer Nichols saw what appeared to be shards of glass on Defendant's jacket and noticed that Defendant's pants and shoes were muddy. Officer Nichols detained and searched Defendant, finding a pair of black mechanic's gloves, and a small red flathead screwdriver in the front pocket of Defendant's pants. Officer Nichols also collected several of Defendant's clothing items, including his hat, boots, jacket, hoodie, and pants.

**{4}** Defendant was charged with fourth degree felony offenses of non-residential burglary, breaking and entering, and possession of burglary tools. At Defendant's jury trial, the State presented testimony from, among other witnesses, Mr. and Mrs. Mordecki and Officer Nichols. The State also played the security camera footage, presented photographs of the scene, and admitted the clothing, boots, gloves, and screwdriver that Officer Nichols collected from Defendant on the night of the incident. Defendant was convicted on all charges. This appeal followed.

**DISCUSSION**

**I. Defendant's Convictions of Burglary and Breaking and Entering Do Not Violate Double Jeopardy**

**{5}** Defendant argues that his convictions for burglary and breaking and entering violate his right to be free from double jeopardy because both convictions are premised on the same act of a single unauthorized entry. Defendant's argument "presents a constitutional question of law, which we review de novo." *State v. Gonzales*, 2019-NMCA-036, ¶ 14, 444 P.3d 1064. Double jeopardy protects defendants from receiving

multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223.

**{6}** Here, Defendant raises a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. "In analyzing double-description challenges, we employ the two-part test, set out in *Swafford* . . . , in which we examine: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately." *Gonzales*, 2019-NMCA-036, ¶ 14. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616 (internal quotation marks and citation omitted). Here, the State does not dispute Defendant's contention that the conduct—the single unauthorized entry—was unitary. Accordingly, we consider the first part of the *Swafford* test to be satisfied and move directly to our analysis of the second.

**{7}** Where, as here, Defendant's conduct is unitary, we next analyze legislative intent, looking first to the language of the statutes. *See Silvas*, 2015-NMSC-006, ¶ 11. "Absent a clear intent for multiple punishments, we apply the *Blockburger* test." *Silvas*, 2015-NMSC-006, ¶ 11; *see Blockburger v. United States*, 284 U.S. 299, 304(1932). *Blockburger* provides that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. "If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Silvas*, 2015-NMSC-006, ¶ 12. "That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Id.* ¶ 13 (internal quotation marks and citation omitted).

**{8}** Since its adoption, the New Mexico Supreme Court has modified the *Blockburger* test, clarifying that application of the test "should not be so mechanical that it is enough for two statutes to have different elements." *State v. Swick*, 2012-NMSC-018, ¶ 21, 279 P.3d 747. When discerning legislative intent for the purpose of the modified *Blockburger* test, we may look to the "language, structure, history, and purpose" of the relevant statutes. *State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104. "If the statutes can be violated in more than one way, by alternative conduct, the modified *Blockburger* analysis demands that we compare the elements of the offense, looking at the [s]tate's legal theory of how the statutes were violated." *State v. Porter*, 2020-NMSC-020, ¶ 8, 476 P.3d 1201. We may ascertain the state's legal theory "by examining the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21.

**{9}** Here, Defendant argues that the modified *Blockburger* test should apply to our analysis of Defendant's double jeopardy claim. Defendant contends that within a modified *Blockburger* analysis and under the State's legal theory of the case, breaking and entering was subsumed within the burglary conviction, therefore, double jeopardy bars his conviction under the breaking and entering statute. Defendant further claims, in the alternative, that even if the elements of each statute are distinct, other indicia of

legislative intent make clear that the Legislature did not intend to permit separate convictions under both the burglary and the breaking and entering statutes based on a single unauthorized entry. The State argues, in turn, that under either a strict or modified *Blockburger* test, Defendant's convictions are not barred by double jeopardy because both offenses require proof of an element the other does not and the Legislature intended to permit separate convictions under the two statutes.

**{10}** While there is no stated intent that the burglary and breaking and entering statutes allow for multiple punishments, we can presume the Legislature intended to allow separate punishment under the statutes because each provision requires proof of a factual element that the other does not. *See Silvas*, 2015-NMSC-006, ¶ 12. Section 30-16-3, prohibiting non-residential burglary, reads in pertinent part, "[b]urglary consists of the unauthorized entry of any . . . dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." Meanwhile, Section 30-14-8(A) prohibits breaking and entering and reads, in pertinent part, "[b]reaking and entering consists of the unauthorized entry of any . . . dwelling or other structure, movable or immovable, where entry is obtained by fraud or deception, or by the breaking or dismantling of any part of the . . . dwelling or other structure[.]" While both offenses require an unauthorized entry into a dwelling, the burglary statute requires a defendant to have a specific intent "to commit any felony or theft therein." Section 30-16-3. Further, the breaking and entering statute requires the unauthorized entry to be effectuated by a specified means, which the burglary statute does not. Section 30-14-8(A). Therefore, under the *Blockburger* strict elements test, both offenses require proof of an element the other does not, and we can infer therefrom that the Legislature intended to authorize separate punishments under the burglary and breaking and entering statutes. *See State v. Hernandez*, 1999-NMCA-105, ¶ 29, 127 N.M. 769, 987 P.2d 1156 (explaining that breaking and entering and aggravated burglary each required an element not included in the other, as burglary can be accomplished by any unauthorized entry with the intent to commit a theft, while breaking and entering requires that the unauthorized entry be by a specified means, such as breaking or dismantling); *see also Swafford*, 1991-NMSC-043, ¶ 12 ("The rationale underlying the *Blockburger* test is that if each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute.").

**{11}** This inference, however, is not conclusive because the breaking and entering statute includes alternative means of entry, such as "by fraud or deception, or by . . . breaking or dismantling." Section 30-14-8(A). In light of the alternative means presented by the breaking and entering statute, we apply the modified *Blockburger* test to examine other indicia of legislative intent. *See State v. Ramirez*, 2016-NMCA-072, ¶ 18, 387 P.3d 266 (explaining that "[w]hen applying *Blockburger* to statutes that are vague and unspecific or written with many alternatives, we look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted" and to determine whether the Legislature intended to allow separate punishments under multiple statutes).

**{12}** Although we recognize that the purpose of "New Mexico's breaking[] and[] entering statute is itself grounded in common law burglary[,]" *State v. Holt*, 2016-NMSC-

011, ¶ 15, 368 P.3d 409 (internal quotation marks and citation omitted), each statute presents distinct objectives that we rely on to guide our analysis. To reiterate, breaking and entering requires an unauthorized means of entry, such as an actual "breaking." *See* § 30-14-8(A); *see, e.g.*, *State v. Contreras*, 2007-NMCA-119, ¶ 17, 142 N.M. 518, 167 P.3d 966 (explaining that "entering by breaking the window" met the requirements of an unauthorized entry). In *State v. Sorrelhorse*, 2011-NMCA-095, ¶ 21, 150 N.M. 536, 263 P.3d 313, we held that the offense of criminal damage to property was a lesser included offense of breaking and entering because both offenses require actual property damage. *Sorrelhorse* indicates that, where entry is obtained by breaking or dismantling physical property, the evident purpose of the breaking and entering statute is to punish unauthorized entry accomplished by physical damage to property. *See id.* ¶ 15.

**{13}** In comparison, while the burglary statute is likewise intended to safeguard possessory property interests, *State v. Rubio*, 1999-NMCA-018, ¶ 15, 126 N.M. 579, 973 P.2d 256, the evolution of common law burglary in New Mexico leads us to believe that the Legislature intended to authorize separate punishments under the statutes. *See generally Sorrelhorse*, 2011-NMCA-095, ¶¶ 18-20 ("To be sure, the common law is the backdrop for the Legislature's enactments, and courts therefore can rely on the common law to construe unclear or ambiguous statutes."). At common law, "[b]urglary consisted of breaking and entering a dwelling of another in the night time with the intent to commit a felony." *Id.* ¶ 19. Initially, the crime required some physical act or element of force but did not specifically require damage to property. *Id.* However, as the common law developed, the "breaking" component of common law burglary could be satisfied by a constructive breaking and did not necessarily require a physical act. *Id.* For example, this Court held that "entry by fraud, deceit, or pretense was sufficient to constitute the 'unauthorized entry' requirement, which had been adopted by the New Mexico Legislature instead of the common law requirement of 'breaking.' " *Id.* Therefore, we conclude the purpose of the breaking and entering statute is sufficiently distinct from the purpose of the burglary statute. The crime of burglary punishes the broader criminal conduct of any unauthorized entry when there is specific criminal intent. *See* § 30-16-3; *Sorrelhorse*, 2011-NMCA-095, ¶ 20 ("The Legislature departed from the common law burglary concepts in enacting Section 30-14-8(A)."); *see also State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶¶ 42-43, 285 P.3d 622 (discussing the broader privacy interests the burglary statute is aimed at protecting).

**{14}** Having concluded that the Legislature intended to allow separate punishments under the two statutes, we turn next to the State's theory of the case. *See Porter*, 2020-NMSC-020, ¶¶ 7-8. A comparison of the instructions tendered to the jury for the two offenses establishes that the breaking and entering charge was not subsumed into the burglary charge. To convict Defendant of breaking and entering, the jury was required to find, in pertinent part, that (1) "[D]efendant entered a structure without permission"; and (2) "[t]he entry was obtained by the breaking of a window[.]" *See* UJI 14-1410 NMRA. Meanwhile, a guilty verdict on the burglary charge required the jury to find, in pertinent part, that Defendant (1) "entered a structure without authorization[,]" and did so (2) "with the intent to commit a theft when inside." *See* UJI 14-1630 NMRA.

**{15}**    Although it agrees on appeal that Defendant's entrance through the window of Ram Signs constituted unitary conduct for the purposes of both statutes, at trial the State did not suggest that the jury rely on the unauthorized entrance as the sole basis for conviction of each crime. *Cf. Silvas*, 2015-NMSC-006, ¶¶ 18-21 (holding that, where a defendant was convicted of trafficking drugs with intent to distribute and possession with intent to distribute, the state's theory of the case was based on the unitary conduct of selling drugs and violated the defendant's right to be free from double jeopardy). Here, the crucial distinction in the two crimes is that the unauthorized entrance required by the burglary charge jury instruction also included the specific intent "to commit a theft when inside." UJI 14-1630(2). Hence, the State's theory of the case for burglary required the jury to find something more than what was required for breaking and entering. Similarly, although the unauthorized entrance through the broken window was a common element of both charges, to convict Defendant of breaking and entering, the jury had to find that the unauthorized entrance was effectuated by breaking the window. That additional element—one that was not required by the burglary instruction—establishes that Defendant's conviction for breaking and entering could not have been subsumed within the aggravated burglary conviction. *See Ramirez*, 2016-NMCA-072, ¶ 23 (explaining that, even where two offenses share a common element, the offenses are not necessarily subsumed within the other, particularly where the defendant can commit one of the offenses and not the other).

**{16}**    The charging documents specifically relied on the "breaking or dismantling" component of the breaking and entering statute in charging Defendant with breaking and entering, § 30-14-8(A), and relied on the "intent to commit a felony or theft therein" component of the burglary statute in charging Defendant with burglary, § 30-16-3. As such, the State's theory of the case regarding the conduct required by the two charges was adequately distinguishable and not solely premised on the unitary conduct. Therefore, we hold that Defendant's convictions for breaking and entering and aggravated burglary did not offend his right to be free from double jeopardy.

## II.    There Was Insufficient Evidence Supporting Defendant's Conviction for Possession of Burglary Tools

**{17}**    Defendant argues there was insufficient evidence supporting his conviction for possession of burglary tools; specifically contending that the State did not present sufficient evidence to show that the gloves or the screwdriver were items designed for or commonly used to gain entry during a burglary, or that Defendant intended to use the items for the purpose of committing a burglary. Defendant further contends that, legally, gloves are not "device[s]" or "instrumental[ities]" as contemplated by Section 30-16-5. The State answers that the evidence was sufficient to establish Defendant's actual use of the gloves and intended use of the screwdriver to facilitate his unauthorized entry into Ram Signs.

**{18}**    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). Under

this test, "we view the evidence in the light most favorable to the state, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Ledbetter*, 2020-NMCA-046, ¶ 6, 472 P.3d 1287 (alteration, internal quotation marks, and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (internal quotation marks and citation omitted).

**{19}** "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted). However, while we do not "substitute our own judgment for that of the jury in weighing the evidence," we must "ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Ledbetter*, 2020-NMCA-046, ¶ 6 (internal quotation marks and citation omitted). In reviewing the sufficiency of evidence, "our responsibility is to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture[,]" and we are required to "distinguish between conclusions based on speculation and those based on inferences." *Ford*, 2019-NMCA-073, ¶ 8 (alteration, internal quotation marks, and citations omitted); *see* UJI 14-6006 NMRA (providing that a jury's "verdict should not be based on speculation, guess or conjecture"). "A reasonable inference is a conclusion arrived at by a process of reasoning[,] which is a rational and logical deduction from facts admitted or established by the evidence." *Ford*, 2019-NMCA-073, ¶ 8 (internal quotation marks and citation omitted).

**{20}** Here, in order to convict Defendant of possession of burglary tools, the jury had to find beyond a reasonable doubt that: (1) "[D]efendant had in his possession gloves and a screwdriver"; (2) "[g]loves and a screwdriver are designed for or commonly used in the commission of a burglary"; and (3) "[D]efendant intended that the gloves and/or screwdriver be used for the purpose of committing a burglary[.]" The parties do not contest the sufficiency of the evidence supporting the first element of the jury instructions regarding Defendant's possession of the gloves and screwdriver. Regarding the second element, Defendant argues that the State did not present sufficient evidence to establish beyond a reasonable doubt that gloves or a screwdriver were commonly used as burglary tools. In our view, the State's argument in response assumes that Defendant used the screwdriver and gloves in committing the burglary and such actual use renders a finding that the gloves or screwdriver are "commonly used in the commission of [a] burglary" unnecessary. To support this claim, the State cites *State v. Jennings*, 1984-NMCA-051, ¶ 12, 102 N.M. 89, 691 P.2d 882. To benefit from *Jennings*, however—and thereby avoid the need to show common usage of the items in question during burglaries—the State was required to present sufficient evidence establishing that Defendant actually used the gloves and screwdriver during commission of the burglary. *See id.* (explaining that where evidence establishes actual use of an item as a burglary tool, evidence that the item is commonly used as a burglary tool is unnecessary).

**{21}** In *Ford*, we clarified that because the crime of "burglary is completed upon entry, it is at the moment of entry or prior to the entry that the use or intended use of burglary tools matters. It therefore follows that burglary tools must be used, or intended to be used, to facilitate entry." 2019-NMCA-073, ¶ 14 (emphasis omitted). In light of *Ford*, the question of Defendant's actual or intended use of the gloves and screwdriver at the time of entry into Ram Signs is central to our analysis of the sufficiency of the evidence supporting his conviction for possession of burglary tools.[1]

**{22}** We begin with the screwdriver. Regarding it, the *only* evidence presented to the jury was Officer Nichols' testimony that he found the screwdriver in Defendant's pocket, wrapped inside the gloves. The State presented no other evidence that could establish that Defendant used or intended to use the screwdriver at the time of entry, or that a screwdriver is designed for or commonly used in the commission of a burglary. Moreover, the security camera footage from inside the lobby of Ram Signs shows that the window was initially struck by an object that is unmistakably larger in size than a screwdriver. Even Mrs. Mordecki's testimony suggested that a screwdriver most likely was *not* used in the burglary of Ram Signs, given her belief that the security camera footage showed something like "a crowbar [or] flashlight" was used to hit the window. Not only did neither of the parties nor the district court express an ability to discern from the security camera footage what object was used to break the window, the State acknowledged the window was made of safety glass which is "kind of hard to break," rendering use of the screw driver even less probable at the time Defendant entered Ram Signs. Indeed, there is no indication from the security camera footage that Defendant used or attempted to use a screwdriver outside or inside the building. Nor did it show that Defendant ever used an object resembling the size or shape of a screwdriver. Further, no scratches or signs of tampering were found in or around Ram Signs that could suggest such use or attempted use at the time of entry.

**{23}** The State nonetheless asserts that "based on the totality of the circumstances," the mere discovery of the screwdriver within Defendant's pocket is enough to prove not only possession, but also that Defendant intended to use the screwdriver to commit a burglary and a screwdriver is commonly used in the commission of a burglary. But the State presented no evidence regarding such common usage, and in any event, there is no evidence regarding the screwdriver other than it having been discovered by Officer Nichols during his search of Defendant *after* the burglary. *Ford* is therefore instructive, and for the jury here to have reached the conclusions necessary to yield a guilty verdict, it would have had to speculate as to the screwdriver's presence and use at the time of Defendant's entry into Ram Signs. *See* 2019-NMCA-073, ¶ 18; *see also Ledbetter*, 2020-NMCA-046, ¶ 14 (explaining that evidence establishing only the defendant's physical presence at the scene of an alleged residential burglary was insufficient to support the specific intent requirement contemplated by the burglary statute); *State v. Montoya*, 2020-NMCA-___, ¶ 29, ___ P.3d ___ (No. A-1-CA-37676, Dec. 10, 2020)

---

[1]In *Ford*, the defendant was convicted of receiving or transferring a stolen vehicle and possession of burglary tools. *Id.* ¶ 1. We held that there was insufficient evidence to support the defendant's possession of burglary tools conviction because, although a screwdriver was discovered inside the stolen vehicle, there was no evidence that the defendant possessed the screwdriver prior to entering the vehicle or that he had any intent to use the screwdriver to enter the vehicle. *Id.* ¶ 18.

(holding that the defendant's possession of a tool designed for the purpose of burglary was insufficient to establish proof of intent to actually use the tool in committing a burglary). "While evidence of intent can be based on circumstantial evidence, we will not uphold a conviction based on mere speculation." *Ledbetter*, 2020-NMCA-046, ¶ 14.

**{24}** The State additionally cites *State v. Hernandez*, 1993-NMCA-132, 116 N.M. 562, 865 P.2d 1206, for the proposition that "[a]ctual use of a utilitarian tool such as a screwdriver is not required to establish possession of burglary tools where there is evidence of possession and intent to use the tool in the commission of a burglary." The State's reliance on *Hernandez* is unpersuasive. There, the defendant challenged the sufficiency of the evidence supporting his convictions of auto burglary and possession of burglary tools. *Id.* ¶ 1. The evidence established that the defendant purchased a screwdriver inside a Kmart, opened an unlocked door of a car parked in the store's parking lot, and attempted "to start the car by inserting something into the ignition." *Id.* ¶ 2. At trial, the defendant testified that "he had tried to start the car by jamming a screwdriver into the ignition." *Id.* We stated that the "[t]heft of the car itself may be an offense committed within the vehicle[,]" as required by the auto burglary statute, and held there was sufficient evidence to support the defendant's convictions even though the defendant did not use the screwdriver to gain entry to the vehicle and instead used the screwdriver to attempt to steal the vehicle itself. *Id.* ¶¶ 6-8.

**{25}** Unlike in *Hernandez*, the jury here only heard testimony that Defendant had a screwdriver in his pocket when searched by Officer Nichols and heard no evidence regarding Defendant's intent to use the screwdriver to commit burglary. Such is not enough for a rational jury to find beyond a reasonable doubt—and without speculation—that Defendant used or intended to use the screwdriver when breaking into Ram Signs. We therefore conclude there was insufficient evidence supporting Defendant's conviction of possession of burglary tools as it relates to the screwdriver.

**{26}** Our review of the sufficiency of the evidence concerning the gloves found by Officer Nichols in Defendant's pocket, and their possible use when the break-in took place, is a more challenging task. Again, the trial evidence rested exclusively on security camera footage and after-the-fact testimony. Officer Nichols stated that he found the gloves in Defendant's pocket following the burglary and offered his opinion that the security camera footage capturing the window being broken displayed a marked contrast between the "absolute black, dark" color of Defendant's hands and the lighter color of his face, suggesting to Officer Nichols that Defendant was wearing gloves. Though not itself evidence, during its closing statement the State argued that Officer Nichols' testimony and the security camera footage established that Defendant was wearing gloves at the time of the burglary in part to protect his hands from broken glass, stating:

> It's notable that in the video, the officer testified, and you can check it out yourself, that the individual appears to be wearing gloves during the commission of the burglary. Why wear gloves during the commission of the burglary if not to protect one's hands from glass, if not to avoid leaving fingerprints? . . . Defendant had gloves on during the commission of the

burglary. And yet, when he is stopped by the police . . . was he wearing gloves? The answer is "no," he was not wearing gloves. He was not wearing gloves to protect him from the cold. He did not have gloves because it was February. They were in his pocket. They were wrapped around a screwdriver when the police encountered him. Gloves in one's pocket do not protect one's hands from the cold. The gloves in the pocket did protect his hands while he was committing a burglary. They protected his hands from the glass and from leaving fingerprints.

**{27}** Although we safeguard the jury's fact-finding role by reconciling conflicts and making inferences based on evidence in the record in a manner supportive of the verdict, we must also ensure its determinations are properly rooted in the evidentiary record. *See Ledbetter*, 2020-NMCA-046, ¶ 6. To this end, several aspects of the evidence upon which the verdict must have rested are troubling. First, Officer Nichols' testimony regarding the gloves—in which he explained what he believed to be depicted by the security camera footage—failed to specify at what point in the security camera footage he believes Defendant can be seen wearing gloves. Importantly, video footage depicts both the moment of break-in and its aftermath, as well as Defendant moving within the Ram Signs facility. The State likewise did not elicit testimony about whether Officer Nichols believed Defendant was wearing gloves at the time of entry into the store, as would be required under *Ford*. *See* 2019-NMCA-073, ¶ 14. Officer Nichols' opinion testimony, therefore, bore only the capacity to inform the jury that it appeared to him that Defendant wore gloves *at some point* during the security camera footage, but not during Defendant's entry into Ram Signs, as suggested by the State in its closing argument.

**{28}** In our view, a determination of guilt based on the use of gloves as a burglary tool required clarity from the security camera footage viewed by the jury. Our own review of that footage—particularly of Defendant's approach and entry into Ram Signs, reveals that it is grainy, blurry, generally unclear, and inconclusive. Indeed, it is not possible to discern details of these pivotal moments from the footage, and as such we cannot verify that a rational juror could determine from such footage alone, whether Defendant was wearing gloves at the time of entry without engaging in impermissible conjecture. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (explaining that if a reasonable inference "must be buttressed by surmise and conjecture in order to convict, the conviction cannot stand" (internal quotation marks and citation omitted)).

**{29}** While the State offered in its closing argument a hypothetical explanation about when and why Defendant wore gloves during the break-in portion of burglary, suggesting that it would have been to protect his hands from glass, counsel's closing argument is not evidence. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("[A]rgument of counsel is not evidence." (internal quotation marks and citation omitted)); *see also* UJI 14-104 NMRA (stating that "[w]hat is said in the [closing] arguments is not evidence"). Moreover, the State's theory as presented in closing required the jury to make the ultimate inference that, as suggested generally by Officer Nichols' testimony, Defendant *was actually* wearing the gloves at the time of entry. That ultimate inference was necessarily premised upon a series of additional inferences that

were not supported by any evidence, such as hypothetical explanations as to why Defendant might wear gloves and have subsequently removed them given internal surveillance does not show Defendant wearing gloves inside the store. We do not permit this kind of inference succession when considering whether sufficient evidence supports a defendant's conviction. *See Slade*, 2014-NMCA-088, ¶ 14 ("An ultimate inference may not be based on a series of inferences."). Given the indeterminate nature of the surveillance video; the failure of specificity within Officer Nichols' opinion testimony, which could nonetheless have been mistakenly relied on by the jury; the State's closing arguments, which assumed Officer Nichols was discussing the color of Defendant's hands at the time of the break-in; and the overall speculative nature of the State's contention that Defendant wore the gloves at the time he would have had to in order to sustain a conviction for possession of burglary tools; we cannot conclude that the conviction was supported by substantial evidence. And indeed, in a criminal trial, "[t]he jury must have a sufficient evidentiary basis to conclude that the defendant actually committed the criminal act he is accused of, not just that he may have done it among a range of possibilities or that it cannot be ruled out among other possible explanations, or even that it is more likely than not." *State v. Consaul*, 2014-NMSC-030, ¶ 70, 332 P.3d 850 (internal quotation marks omitted); *see Slade*, 2014-NMCA-088, ¶ 14 ("[E]vidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition." (internal quotation marks and citation omitted)).

**{30}** We hold that there was insufficient evidence upon which the jury could find Defendant guilty of possession of burglary tools as it relates to the gloves, without impermissibly relying on speculation, conjecture, and multiple inferences. Given our resolution of this issue, we do not reach Defendant's additional argument that, under the possession of burglary tools statute, gloves are not "a device or instrumentality designed or commonly used for the commission of burglary." Section 30-16-5.

**CONCLUSION**

**{31}** For the above reasons, we affirm Defendant's convictions for breaking and entering and burglary and reverse Defendant's conviction for possession of burglary tools. We remand to the district court for entry of an amended judgment and sentence in accordance with this opinion.

**{32}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**