The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: <u>April 8, 2021</u>

## No. A-1-CA-37575

## STATE OF NEW MEXICO,

Plaintiff-Appellee,

**v.**

## ROBERTO OCON,

Defendant-Appellant.

## APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
**William G.W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**IVES, Judge.**

{1}     Defendant Roberto Ocon appeals his convictions for aggravated assault upon a peace officer (deadly weapon), in violation of NMSA 1978, Section 30-22-22(A)(1) (1971); resisting, evading, or obstructing an officer (resisting or abusing a peace officer), in violation of NMSA 1978, Section 30-22-1(D) (1981); and battery against a household member, in violation of NMSA 1978, Section 30-3-15 (2008). Defendant argues that (1) his conviction for aggravated assault upon a peace officer resulted from a fundamental error in the jury instructions and was not supported by sufficient evidence; (2) his conviction for resisting or abusing a peace officer resulted from a fundamental error in the jury instructions and violated his right against double jeopardy; and (3) a new trial is required on the charge of battery against a household member because the district court admitted hearsay evidence. Accepting the State's concession that Defendant's conviction for resisting or abusing a peace officer was the result of fundamental error, we reverse and remand for a new trial on that charge. We affirm Defendant's other convictions.

## BACKGROUND

{2}     On the afternoon of August 2, 2016, Victim called 911 from her cell phone. Victim did not respond when the operator answered, but the operator could hear people speaking Spanish on the open line. The operator, who understood Spanish,

heard someone say the Spanish equivalent of "you're here to kill me; why are you here to kill me?" Believing that the call might have related to an act of domestic violence, the operator dispatched Officer Kevin Gutierrez and Chief James Jones of the Eunice Police Department to Victim's home. When Officer Gutierrez and Chief Jones arrived, a neighbor told them that she thought Victim's ex-boyfriend was there trying to hurt Victim. The neighbor's concerns were not unfounded; Defendant, who was in fact Victim's estranged husband, was in the home engaged in an argument with Victim that, by all accounts, turned physical.

{3}     After speaking with the neighbor, the officers knocked on Victim's front door and announced themselves as police, and Defendant opened the door. Officer Gutierrez asked Defendant if Victim was there. Instead of answering, Defendant began walking back into the home. When Officer Gutierrez told and motioned for Defendant to come toward him, Defendant said, "Okay[,]" but continued toward the kitchen. Officer Gutierrez then drew his gun and approached the threshold of the kitchen while yelling at Defendant to get on the ground. Defendant turned back toward Officer Gutierrez, and, as the two men met at the threshold of the kitchen, Officer Gutierrez yelled, "No, no, no; no, no, no; get on the ground; get on the ground, sir" before shooting Defendant twice in the chest. Defendant was transported to a nearby hospital and ultimately survived the shooting. Victim was also transported by ambulance to a hospital, as she had sustained visible injuries.

2

**{4}** At trial, Officer Gutierrez testified that he shot Defendant because Defendant had armed himself with a knife in the kitchen and thrusted, slashed, and reared back to stab him with it. But Defendant's counsel argued that Defendant had been holding a cell phone. Footage from Officer Gutierrez's lapel camera is inconclusive; the moments surrounding the shooting are a blur, and the footage shows both a cell phone and a knife on the floor of the kitchen after the shooting. There was also a dispute at trial as to the amount of force Defendant used against Victim, whether he had threatened to kill her, and whether he prevented her from using her cell phone.

**{5}** For the violence against Victim, the State prosecuted Defendant for assault against a household member with intent to commit a violent felony, in violation of NMSA 1978, Section 30-3-14(A) (1995);[1] false imprisonment, in violation of NMSA 1978, Section 30-4-3 (1963); and interference with communications, in violation of NMSA 1978, Section 30-12-1 (1979). On those charges, the jury only found Defendant guilty of battery against a household member, on which it had been instructed as a lesser included offense of assault against a household member with

---

[1]The violent felony, under the State's theory of the case, was aggravated battery against a household member (great bodily harm). *See generally* NMSA 1978, § 30-3-16(A), (C) (2008). While we note that neither aggravated battery against a household member nor any other form of battery is explicitly listed as a "violent felony" in Section 30-3-14(A), we need not decide whether that crime qualifies as a violent felony because the jury acquitted Defendant of the charge.

intent to commit a violent felony.[2] For the violence against Officer Gutierrez, the State prosecuted Defendant for aggravated assault upon a peace officer (deadly weapon), in violation of Section 30-22-22(A)(1); and resisting, evading, or obstructing an officer (resisting or abusing a peace officer), in violation of Section 30-22-1(D). The jury found Defendant guilty of both crimes against the officer. Defendant appeals.

## DISCUSSION

### I. Defendant's Conviction for Aggravated Assault Upon a Peace Officer Was Not the Result of Fundamental Error

{6} Defendant argues that we should reverse his conviction for aggravated assault upon a peace officer because the jury was not instructed on every essential element of the crime. The jury was instructed that, to convict Defendant of aggravated assault upon a peace officer by use of a deadly weapon, it had to find the following elements beyond a reasonable doubt:

1. [D]efendant walked towards Officer Gutierrez with a knife and made a stabbing motion;

2. At the time, [Officer] Gutierrez was a peace officer and was performing duties of a peace officer;

3. [D]efendant knew [Officer] Gutierrez was a peace officer;

---

[2]Because Defendant does not raise the issue on appeal, we offer no opinion about whether, in certain circumstances, battery against a household member is a lesser included offense of aggravated assault against a household member with intent to commit a violent felony.

4

4.     [D]efendant's conduct caused [Officer] Gutierrez to believe [D]efendant was about to intrude on [Officer] Gutierrez['s] bodily integrity or personal safety by touching or applying force to [Officer] Gutierrez in a rude[,] insolent[,] or angry manner;

5.     A reasonable person in the same circumstances as [Officer] Gutierrez would have had the same belief;

6.     [D]efendant used a knife;

7.     This happened in New Mexico on or about the 2nd day of August 2016.

Although we agree with Defendant that the given instruction erroneously failed to inform the jury that it was also required to find that Defendant used a deadly weapon and that his conduct was unlawful, we conclude that these errors do not rise to the level of fundamental error under our Supreme Court's precedents and therefore do not warrant reversal.

**A.**     **Standard of Review**

{7}     We review for fundamental error because Defendant did not preserve his argument by objecting to the jury instruction at trial. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Our review involves two basic steps. The first is to determine whether error occurred. In other words, our analysis "begins at the same place as [the] analysis for reversible error[:]" we ask "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 19; *see State v. Grubb*, 2020-NMCA-003, ¶ 7, 455 P.3d 877 ("In a fundamental error analysis, we begin by considering whether reversible error exists[.]"). Jury

5

instructions cause confusion or misdirection when, "through omission or misstatement," they do not provide "an accurate rendition" of the essential elements of a crime. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134; *see State v. Herrera*, 2014-NMCA-007, ¶ 8, 315 P.3d 343 (explaining that the Sixth and Fourteenth Amendments to the United States Constitution "entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt" (internal quotation marks and citation omitted)); *see also State v. Suazo*, 2017-NMSC-011, ¶ 26, 390 P.3d 674 ("A jury instruction [that] does not instruct the jury upon all questions of law essential for a conviction . . . is reversible error." (internal quotation marks and citation omitted)). *But see id.* ¶¶ 27-31 (analyzing, "under a reversible error standard[,]" whether "a failure to instruct on an essential element of an offense" did not require reversal because "there [could] be no dispute that the essential element was established" (internal quotation marks and citation omitted)).

{8}     If we conclude that the instructions were erroneous, we proceed to the second step, asking whether the error is fundamental. Fundamental error exists if it would "shock the [court's] conscience" to allow the conviction to stand, *Barber*, 2004-NMSC-019, ¶ 14, either because of "the obvious innocence of the defendant," *id.* ¶ 16, or because "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17. This inquiry requires us

6

to "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case[.]" *Id.* ¶ 19 (internal quotation marks and citation omitted).

{9}     Our Supreme Court has recognized that the omission of an essential element from a jury instruction often rises to the level of fundamental error, *id.* ¶ 20, but its precedent includes multiple formulations of the circumstances under which the omission of an essential element does *not* amount to fundamental error. These formulations diverge on a crucial point: whether the focus of the inquiry is on what the jury in a particular case *actually* found—what it "effectively determined," *State v. Orosco*, 1992-NMSC-006, ¶ 19, 113 N.M. 780, 833 P.2d 1146—under the given instructions, or on the degree of confidence an appellate court has in what the jury *would have* found had it been properly instructed. *Compare State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230 ("Fundamental error occurs when jury instructions fail to inform the jurors that the [s]tate has the burden of proving an essential element of a crime and we are left with no way of knowing whether the jury *found* that element beyond a reasonable doubt." (emphasis added) (internal quotation marks and citation omitted)), *Barber*, 2004-NMSC-019, ¶ 29 ("Error is not fundamental when the jury *could not have* reached its verdict without also *finding* the element omitted from the instructions." (emphasis added)), *and State v. Cunningham*, 2000-NMSC-009, ¶¶ 23-24, 128 N.M. 711, 998 P.2d 176 (upholding a conviction because

7

the omitted element "*was decided* by the jury when [it] contemplated [a] separate . . . instruction" (emphasis added)), *with State v. Padilla*, 1997-NMSC-022, ¶ 8, 123 N.M. 216, 937 P.2d 492 (explaining that "[i]t is fundamental error . . . to fail to instruct on an essential element of a crime unless that element is undisputed" and "the jury *undoubtedly would have . . . found*" the element (emphasis added)), *and State v. Lopez*, 1996-NMSC-036, ¶ 13, 122 N.M. 63, 920 P.2d 1017 ("We will only affirm a case in which the trial court failed to instruct the jury on an essential element when, under the facts adduced at trial, that omitted element was undisputed and indisputable, and *no rational jury could have concluded* otherwise." (emphasis added) (internal quotation marks and citation omitted)).

{10} We elaborate on both formulations, beginning with *Orosco*, which we view as the foundation for our Supreme Court's modern fundamental error jurisprudence in the context of jury instructions that omit essential elements and which has continued to inform the Court's decisions in recent years. *See, e.g.*, *Samora*, 2016-NMSC-031, ¶¶ 28-29. In *Orosco*, our Supreme Court recognized that fundamental error does not exist where the jury actually, albeit implicitly, found the missing element. In that case, the Court consolidated two sex-offense cases and considered whether to reverse the defendants' convictions because the jury in each case had not been instructed on the unlawfulness element of the charged crime. 1992-NMSC-006, ¶¶ 1, 3, 5. One of the defendants "was alleged to have fondled the [child victim's]

intimate parts in the restroom of a bar[,]" and "[n]o other version of the . . . manner of the touching was presented." *Id.* ¶ 11. Regarding the other defendant's conviction, "the only evidence" of the alleged sexual contact was the child victim's "description of an incident in which [the] defendant fondled the [child victim]'s genitals for three hours in [the] defendant's truck." *Id.* Each defendant denied that these touchings had occurred, but the juries rejected those denials in returning guilty verdicts. *Id.* ¶¶ 10-11. On the facts of each case, the defendants' actions were inherently unlawful: because there was nothing "in the facts to suggest that the touchings, if they occurred, might have involved . . . any . . . lawful purpose[,]" the juries in each case could only have found that "an unlawful touching occurred or [that] it did not[.]" *Id.* ¶ 11. Accordingly, the Court held that, despite the omission of the unlawfulness element in each case, the defendants' convictions were not the result of fundamental error because, "under the undisputed evidence of unlawfulness in the cases and the facts upon which the juries relied to find that [the] defendants committed the [charged] acts, the juries themselves *effectively determined* the existence of the omitted element." *Id.* ¶ 19 (emphasis added). *Orosco* thus indicates that fundamental error does not occur when the facts and circumstances of the case show that the jury implicitly found the missing element in reaching its verdict. *Orosco* teaches that cases in which a jury's findings "necessarily include[] or amount[] to a finding on an element omitted from the jury's instructions" are

9

"[c]lear[]" examples of circumstances under which our courts will find that the omission does not rise to the level of fundamental error. *Id.* ¶ 12; *see, e.g.*, *Barber*, 2004-NMSC-019, ¶¶ 29-31 (holding that the district court's failure to inform the jury that findings of knowledge and control were required for the jury to find that the defendant possessed methamphetamine did not result in fundamental error because the jury found that the defendant "intended to transfer the methamphetamine to another" and "could not [have done so] . . . without also finding that [the d]efendant was [knowingly] exercising some degree of control over the drugs"); *Cunningham*, 2000-NMSC-009, ¶ 23 (holding that the district court's failure to instruct the jury on unlawfulness in a first-degree murder case did not result in fundamental error because the element of unlawfulness "was decided by the jury when [it] contemplated [a] separate self-defense instruction" and a reasonable juror could not have "found [a different] lawful justification" for a homicide in "the evidence presented at trial").

{11} But other precedent of our Supreme Court demonstrates that an actual, though implicit, jury determination on an omitted element is not an absolute prerequisite to affirmance. *State v. Stevens*, 2014-NMSC-011, 323 P.3d 901, illustrates the narrow circumstance in which a conviction will be upheld because the jury's verdict, considered together with the given instructions and the parties' legal and factual presentations, leaves no doubt that the jury *would have found* the omitted element if

10

properly instructed. In *Stevens*, the jury had found the defendant guilty of criminal sexual penetration during the commission of a felony where the underlying felony was distribution of a controlled substance to a minor. *Id.* ¶¶ 4, 11. However, there were multiple errors in the jury instructions, including a failure to instruct the jury that it could not return a guilty verdict unless it found that the criminal sexual penetration was the result of the underlying felony of distribution of a controlled substance to a minor. *Id.* ¶ 44. Although the jury found that the defendant gave methamphetamine to the victim and that the defendant caused the victim to engage in a sex act, *id.* ¶¶ 13, 43, those findings did not explicitly or implicitly resolve the question of whether the defendant's provision of methamphetamine to the victim *caused* the victim to engage in the sex act. *See id.* ¶¶ 2-3, 13, 39, 44-45; *see also id.* ¶ 39 (holding "that when a [charge of criminal second penetration in the second degree] is based on the commission of a felony, it must be a felony that is committed against the victim of, and that assists in the accomplishment of, sexual penetration perpetrated by force or coercion or against a victim who, by age or other statutory factor, gave no lawful consent"). The Court nevertheless affirmed. The victim had testified that she engaged in the sex act because she was high, indicating that the sex act was the result of the separate offense, perpetrated against the victim, of distribution of a controlled substance to a minor and not merely contemporaneous with it. *Id.* ¶ 45. Because the testimony on this point went "unchallenged," the Court

11

determined that the causal connection between the sex act and the provision of methamphetamine had been established. *Id.* And, emphasizing the jury's findings that the defendant gave the victim methamphetamine and caused the victim to engage in a sex act, the Court further concluded that the defendant's guilt was not "so doubtful that a conviction would shock the judicial conscience." *Id.* (citing *Orosco*, 1992-NMSC-006, ¶ 12). In other words, the *Stevens* Court concluded that the jury "undoubtedly would have . . . found[,]" *Padilla*, 1997-NMSC-022, ¶ 8, the omitted causation element if the jury had been properly instructed. *See Stevens*, 2014-NMSC-011 ¶¶ 44-46.

{12} Synthesizing our Supreme Court's precedent, we conclude that an appellate court may affirm a conviction notwithstanding the absence of an implicit jury finding on an omitted element if the jury, having considered the parties' legal and factual presentations and returned a guilty verdict on the given instructions, undoubtedly would have found the essential element if properly instructed. *See Padilla*, 1997-NMSC-022, ¶ 8. That conclusion is possible only where proof of the omitted element is so strong that no rational jury could have failed to find that element. And, irrespective of the strength of the State's case, a reviewing court cannot conclude that the jury undoubtedly would have found an omitted element when that element was "disputed" or "in issue" at trial. Reversal is mandatory regardless of a defendant's trial strategy if "any evidence or suggestion in the facts, however slight"

12

would have permitted a rational jury to conclude that the State failed to meet its burden to prove the omitted element beyond a reasonable doubt. *Orosco*, 1992-NMSC-006, ¶¶ 10, 13.[3]

**B.  The Error in the Instruction Did Not Amount to Fundamental Error Under the Circumstances Presented**

{13}  Applying the fundamental error standard set forth in our Supreme Court's precedents, we conclude that, although the jury instruction in Defendant's case omitted two essential elements, reversal is not warranted. The errors here were not fundamental because the jury's findings and the unchallenged evidence on which those findings rested show that the jury, if properly instructed, undoubtedly would have found both omitted elements. *Cf. Stevens*, 2014-NMSC-011, ¶¶ 44-46. The given instruction deviated from UJI 14-2202 NMRA[4] by omitting the deadly

---

[3]Our Supreme Court's cases demonstrate that an element may be "undisputed" if by "concession it is not at issue." *Padilla*, 1997-NMSC-022, ¶ 8; *see Lopez*, 1996-NMSC-036, ¶ 18 (holding that the defendant's testimony that he shot at a person while "knowing that his acts created a strong probability of death or great bodily harm" "conclusively established the mens rea requirement for second-degree murder"). Since no concession or admission of the elements omitted from the jury instructions in this case appears in the record, this basis for determining that an omitted element is undisputed has no bearing on our analysis.

[4]Although the State cites UJI 14-2201 NMRA as the appropriate instruction, the given instruction hews closer to UJI 14-2202, and we therefore base our analysis on UJI 14-2202. Because Defendant only challenges the omission of the deadly weapon and unlawfulness elements, which the State must prove in any prosecution under Section 30-22-22(A)(1), it is not necessary for us to opine on whether another of the aggravated assault on a peace officer UJIs would have been more appropriate in this case.

weapon and unlawfulness elements. *See generally* § 30-22-22(A)(1) (proscribing, in pertinent part, "*unlawfully* assaulting or striking at a peace officer *with a deadly weapon*" (emphasis added)). We analyze each omitted element in turn.

{14}     As to the deadly weapon element, the jury was only instructed that it could not return a guilty verdict unless it found beyond a reasonable doubt that "[D]efendant used a knife[.]" The given instruction omitted the further, necessary direction that "[a] knife is a deadly weapon only if you find that a knife, when used as a weapon, could cause death or great bodily harm." *See* UJI 14-2202 use note 7 (indicating that such additional direction is required if the object in question is not specifically listed in the definition of "deadly weapon" under NMSA 1978, Section 30-1-12(B) (1963) and, therefore, not a per se deadly weapon).[5] Although the

_____

[5]The use notes also provide that, when the object in question is not a per se deadly weapon, "the definition of 'great bodily harm[]' must also be given." UJI 14-2202 use notes 6-7. Although a definition of "great bodily harm" was among the given jury instructions, presumably in conjunction with the charge of assault against a household member with intent to commit a violent felony where the violent felony was aggravated battery against a household member (great bodily harm), that instruction asked the jury to determine whether "[D]efendant acted in a way that would likely result in death or great bodily harm *to* [*Victim.*]" (Emphasis added.) *See* UJI 14-131, -393 NMRA. Because no instruction referenced great bodily harm to Officer Gutierrez, we do not think the jury would have considered the given definition of the phrase relevant to its verdict on the aggravated assault upon a peace officer charge. *Cf. Benally*, 2001-NMSC-033, ¶¶ 19-20 (basing a finding of fundamental error in part on the Court's conclusion that a reasonable jury "would [not] graft the correct burden of proof" from a self-defense instruction addressing aggravated battery and voluntary manslaughter onto a separate elements instruction addressing second-degree murder).

14

statutory definition of "deadly weapon" lists a number of specific kinds of knives, it does not list the generic "knife." Accordingly, our Supreme Court has held that a "knife" is not a per se deadly weapon. *See State v. Nick R.*, 2009-NMSC-050, ¶ 37, 147 N.M. 182, 218 P.3d 868 ("[I]n an actual use case involving an unlisted weapon, the jury must find, among other elements, that an object was actually used as a weapon and that it was capable of causing the wounds described in the statute."); *see also* § 30-1-12(A)-(B) (defining "deadly weapon" as "any weapon which is capable of producing death or great bodily harm," including listed weapons and "other weapons with which dangerous wounds can be inflicted[,]" and defining "great bodily harm" as "injury . . . which creates a high probability of death; . . . causes serious disfigurement; or . . . results in permanent or protracted loss or impairment of the function of any member or organ of the body"). Because it did not require the jury to determine whether the knife Defendant used was capable of causing death or dangerous wounds, as described in the statutory definition of "deadly weapon," the jury instruction erroneously omitted an essential element. *See Nick R.*, 2009-NMSC-050, ¶ 37 (providing that, "no matter how obvious the existence of any essential element of an offense may seem[,]" that determination "cannot be . . . taken from the jury's consideration"); *see also Stevens*, 2014-NMSC-011, ¶ 40 ("[T]he law is clear that the . . . right to trial by jury guarantees that all facts essential to a defendant's [conviction and] sentence must be determined by a jury, whether or not

15

a judge or panel of judges might think those facts were proved in a particular case.").

*But cf. State v. Sutphin*, 2007-NMSC-045, ¶¶ 21-22, 142 N.M. 191, 164 P.3d 72 (concluding that unlawfulness was not an essential element in a homicide case that did not involve self-defense and, therefore, the omission of that element was not erroneous).[6]

{15}    However, we conclude that the omission of the deadly weapon element was not fundamental error. The jury explicitly found that Defendant "walked towards Officer Gutierrez with a knife and made a stabbing motion[,]" placing the officer in an objectively reasonable fear for his "bodily integrity or personal safety." This amounts to a finding that Defendant used the knife as a weapon.[7] *Cf. State v.*

---

[6]Because "[e]very killing of a person by another is presumed to be unlawful," *State v. Osborne*, 1991-NMSC-032, ¶ 29, 111 N.M. 654, 808 P.2d 624 (internal quotation marks and citation omitted), our Supreme Court's cases indicate that unlawfulness is an essential element of a homicide crime only where the evidence provides a reasonable basis for concluding that the homicide was justified or excusable. *See Sutphin*, 2007-NMSC-045, ¶¶ 21-22 (holding that "unlawfulness was not an essential element needing to be proven by the [s]tate" because "the evidence . . . [was] incapable of raising a reasonable doubt in the jury's mind" regarding the lawfulness of the defendant's conduct (internal quotation marks and citation omitted)); *State v. Parish*, 1994-NMSC-073, ¶ 5, 118 N.M. 39, 878 P.2d 988. *But cf. Cunningham*, 2000-NMSC-009, ¶ 9 (recognizing the presumption and stating that the defendant on appeal "correctly assert[ed] that unlawfulness is an element of deliberate-intent murder" in a case where self-defense was raised).

[7]Although UJI 14-2202 requires the jury to explicitly find that the object in question is a deadly weapon, it does not require an explicit finding that the defendant used the object in question *as a weapon. But see Nick R.*, 2009-NMSC-050, ¶ 37 ("[I]n an actual use case involving an unlisted weapon, the jury must find . . . that an object was actually used as a weapon[.]"). Instead, the UJI calls for a case-specific

16

*Herrera*, 2015-NMCA-116, ¶¶ 11, 16-17, 362 P.3d 167 (analyzing the sufficiency of the evidence for the defendants' aggravated assault convictions and treating the jury's finding that the defendants either brandished a knife or held a knife to one victim's throat and placed the victims in an objectively reasonable fear for their bodily integrity or personal safety as a finding that the knife was used as a weapon). Hence, as to the deadly weapon element, the only question before us is whether fundamental error occurred because the jury was not instructed on the need to determine whether the knife, when so used, could cause death or great bodily harm.

{16} Although the jury did not implicitly decide that issue, it undoubtedly would have found the knife to be capable of causing death or great bodily harm if properly instructed. Chief Jones testified that the knife was "large," and Officer Gutierrez testified that it was a "fillet kni[fe]" with a "long, sharp blade[] . . . about six inches long." Aside from that testimony, the only other evidence of the knife's character was a photograph of the knife, which was entirely consistent with the officers' descriptions of it. Having reviewed all of the evidence and argument presented by the State and Defendant at trial, we see nothing suggesting that the "knife" the jury found was used could have been anything other than a sharp, six-inch-long knife. To provide a few obvious examples, no witness expressed doubt or uncertainty

---

description of the alleged unlawful act, threat, or menacing conduct and requires the jury to determine whether the object in question was used as described.

17

regarding those characteristics; no documentary evidence hinted that the knife did not possess them; and neither party argued that, if a knife was used, its characteristics were debatable.

{17} On the basis of the facts presented at trial and the jury's findings, we see no plausible reason to doubt that the jury, if asked, would have drawn the commonsense conclusion that the sharp, six-inch knife that Defendant used was capable of causing death or the kinds of injuries that amount to great bodily harm. *Cf., e.g.*, *State v. Cordova*, 2016-NMCA-019, ¶¶ 18-19, 366 P.3d 270 (holding that the evidence was sufficient for the jury's conclusion that the victim suffered "great bodily injury" based on the victim's testimony that she "experienced severe bruising, road rash, and bruised ribs[,]" along with other testimony that allowed for the jury to conclude those injuries were "prolonged"). Neither the defense presented nor anything else in the record suggests that the sharp, six-inch knife in question would be incapable of causing death or great bodily harm. *Compare Samora*, 2016-NMSC-031, ¶ 28 (concluding, under *Orosco*, that an omitted element had been in issue at trial), *with Stevens*, 2014-NMSC-011, ¶¶ 45-46 (concluding, under *Orosco*, that an omitted element was not in issue). *See generally Orosco*, 1992-NMSC-006, ¶ 10 (requiring a reviewing court to determine whether the missing element was "in issue" by asking "whether there was *any evidence or suggestion in the facts, however slight*, that could have put the [omitted] element . . . in issue," rather than focusing exclusively

18

on the defense theory and presentation (emphasis added)). We think reason would have compelled the jury to find that the knife's use as a weapon could result in death or great bodily harm—indeed, given that jurors possess basic human experience, it would be astonishing if a single juror had any doubt that a sharp, six-inch knife could cause at least great bodily harm. Having "review[ed] the entire record" and "plac[ed] the jury instructions in the context of the individual facts and circumstances of the case," *Barber*, 2004-NMSC-019, ¶ 19 (internal quotation marks and citation omitted), we conclude that the jury undoubtedly would have found the knife to be a deadly weapon had it been properly instructed. The omission of the deadly weapon element was not fundamental error.

{18}     Nor was the omission of the unlawfulness element. To establish that element, the State was required to prove beyond a reasonable doubt that Defendant "threatened the safety" or "challenged the authority" of Officer Gutierrez. UJI 14-2202; *see Padilla*, 1997-NMSC-022, ¶ 2 (explaining that only those acts that "actually harm officers by jeopardizing their safety, or that meaningfully challenge their authority" are unlawful). [8] Defendant argues that the omission of the unlawfulness element was fundamental error because "[t]he jury could have found

_____

[8]We again note that the use notes for many of the assault on a peace officer UJIs erroneously indicate that this requirement was established by *State v. Padilla*, 1996-NMCA-072, 122 N.M. 92, 920 P.2d 1046, rather than *Padilla*, 1997-NMSC-022. *See State v. Florez*, No. A-1-CA-36062, mem. op. ¶ 19 & n.6 (N.M. Ct. App. Oct. 2, 2019) (non-precedential).

that [Defendant]'s conduct was sufficient to have put Officer Gutierrez in reasonable apprehension of a battery[] while simultaneously doubting that [Defendant]'s conduct represented a genuine threat to Officer Gutierrez's authority or safety." We conclude that no rational jury could have made such a finding.

{19}     Although the jury's guilty verdict does not imply a finding on whether Defendant "threatened the safety" or "challenged the authority" of Officer Gutierrez, the jury undoubtedly would have found, if properly instructed, that Defendant at least threatened the officer's safety. The jury found that Officer Gutierrez reasonably believed Defendant was about to intrude on his bodily integrity or personal safety because Defendant used a knife to make a stabbing motion. It made those findings on the basis of unchallenged evidence showing that the knife was six inches long and that Defendant and the officer were at close quarters.[9] Given the undisputed evidence of Defendant's proximity to the officer and the facts underlying the findings the jury did make, whether there was an actual threat to Officer Gutierrez's safety was not in issue here. Considering the lack of dispute on this element and the jury's explicit findings accepting the State's account of events, we have no doubt

_____

[9]The footage from Officer Gutierrez's lapel camera shows that Defendant and the officer were standing face to face just before the shooting, and Officer Gutierrez testified that Defendant had touched him. There was no dispute regarding Defendant's proximity to the officer, and defense counsel implied as much when he argued in closing that Defendant had moved toward the officer in an effort to push the officer's gun away from himself.

that the jury also would have found that Defendant's conduct threatened Officer Gutierrez's safety. We thus conclude that any rational jury, having determined that Defendant committed aggravated assault upon a peace officer in the manner shown at trial, would also have found "that [his] acts were performed in the manner proscribed by law." *Orosco*, 1992-NMSC-006, ¶ 20.

{20}     Given the unchallenged facts developed at trial, we conclude that, in light of the findings that the jury did make, the jury undoubtedly would have found, if properly instructed, that the knife was capable of causing death or great bodily harm and that Defendant acted unlawfully. The omission of the essential elements neither makes "the question of guilt . . . so doubtful that it would shock the conscience to permit the conviction to stand," *id.* ¶ 12, nor "makes [the] conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶ 17. Accordingly, we hold that Defendant's conviction was not the result of fundamental error.[10] We emphasize that our holding flows from Defendant's failure to raise the errors in the jury instruction at trial. *See Stevens*, 2014-NMSC-011, ¶ 45 (indicating that the case before the Court "exemplifie[d] the kind of situation in which a preserved challenge to an instruction might have resulted in reversal").

---

[10]Contrary to Defendant's argument, the omission of two elements, rather than one, has no bearing on our analysis. The jury's findings and the evidence underlying those findings permit us to independently conclude that no fundamental error resulted from either omission or from the combination of the two.

## II. The Evidence Was Sufficient for the Jury's Verdict as to Aggravated Assault Upon a Peace Officer Under the Erroneous Instruction

{21} Defendant also argues that the evidence did not suffice to support his conviction for aggravated assault upon a peace officer because it was unclear from the lapel camera video whether Defendant in fact wielded a knife. We review the sufficiency of the evidence "in light of the *defective* jury instruction given below." *State v. Rosaire*, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597, *aff'd*, 1997-NMSC-034, 123 N.M. 701, 945 P.2d 66. We do so "for the same reason that . . . we review the sufficiency of *all* the evidence below, including the wrongfully admitted evidence." *Id.*; *see also State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). *But see State v. Carpenter*, 2016-NMCA-058, ¶ 15, 374 P.3d 744 (citing *Musacchio v. United States*, 136 S. Ct. 709, 713-15 (2016) (holding that, because "[s]ufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury[,]" "a sufficiency challenge should be assessed against the elements of the charged crime" (internal quotation marks and citation omitted))).

{22} In reviewing the sufficiency of the evidence, we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-

22

NMSC-009, ¶ 26. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548.

{23} The jury was instructed in pertinent part that, to convict Defendant of aggravated assault upon a peace officer, it had to find beyond a reasonable doubt that (1) Defendant "walked towards Officer Gutierrez with a knife and made a stabbing motion"; (2) Defendant's "conduct caused [Officer] Gutierrez to believe [Defendant] was about to intrude on [Officer] Gutierrez['s] bodily integrity or personal safety by touching or applying force to [Officer] Gutierrez in a rude[,] insolent[,] or angry manner"; (3) "[a] reasonable person in the same circumstances as [Officer] Gutierrez would have had the same belief"; and (4) Defendant "used a knife[.]"

{24} At trial, Officer Gutierrez testified that Defendant thrusted and slashed at him with a knife and reared back to stab him, placing him in fear for his life. Footage from Officer Gutierrez's lapel camera was admitted into evidence, and it shows both

23

a knife and a cell phone near where Defendant lay on the kitchen floor after being shot. A still from the video showing that knife was also admitted into evidence. Officer Gutierrez testified that the knife in the still was the knife that Defendant used to attack him. And Chief Jones testified that he saw a knife—and only a knife—on the floor after the shooting. Viewing this evidence in the light most favorable to the guilty verdict, we conclude that the jury rationally found that Defendant attacked Officer Gutierrez with a knife as alleged. Although Defendant maintained that he had been holding a cell phone and not a knife, the jury was free to credit the State's version of events over Defendant's. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Accordingly, we hold that there was sufficient evidence to support the verdict and affirm Defendant's conviction for aggravated assault upon a peace officer.

### III. We Reverse Defendant's Conviction for Resisting, Evading, or Obstructing an Officer

{25} Defendant argues that we should reverse his conviction for resisting, evading, or obstructing an officer because (1) it resulted from a fundamental error in the jury instruction, and (2) his convictions for both resisting or abusing a peace officer and aggravated assault upon a peace officer constitute double jeopardy.[11] The State

---

[11]Because we vacate Defendant's conviction, we do not examine his double jeopardy claim, which is premised on the contention that his conviction for two crimes against Officer Gutierrez subjected him to multiple punishments for a single

concedes the fundamental error argument on the ground that the jury convicted Defendant of a crime that the State had not charged. *See Grubb*, 2020-NMCA-003, ¶ 9 ("[A] conviction for a crime with which the defendant was not charged . . . constitutes a due process violation that amounts to fundamental error."). Although we are not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we agree that our precedents require reversal.[12]

**{26}**    Section 30-22-1 has four subsections that provide "alternative means by which the offense [of resisting, evading, or obstructing an officer] may be committed." *State v. Jimenez*, 2017-NMCA-039, ¶ 26, 392 P.3d 668 (internal quotation marks and citation omitted). "[A] violation of one subsection cannot necessarily establish a violation of another." *Id.* ¶ 28. Because the statute "provides distinct and alternative" means of committing the offense, when the State "chooses to charge under only a particular part of the statute," it "is limited to proving what it has charged." *Id.* ¶ 27 (internal quotation marks and citation omitted). UJI 14-2215

---

offense. *See Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223 (explaining that the double jeopardy clause protects against multiple punishments for the same offense and distinguishing that protection from the clause's protections against a second prosecution for the same offense after conviction or acquittal).

[12]We understand the State to concede that fundamental error occurred because Defendant did not receive due process, not because Defendant was denied his "fundamental right . . . to have the jury determine whether each element of the charged offense [was] proved by the [S]tate beyond a reasonable doubt[.]" *Orosco*, 1992-NMSC-006, ¶ 20. Therefore, our review employs a different analytical framework than the one we used in reviewing the erroneous jury instruction as to aggravated assault upon a peace officer.

25

NMRA "reinforce[s] the structure of Section 30-22-1" by providing "four alternatives" that "correspond to the four subsections of Section 30-22-1." *Jimenez*, 2017-NMCA-039, ¶¶ 28-29. The use notes to the UJI direct the trial court to "[u]se only the applicable alternative." UJI 14-2215 use note 3.

{27}     Here, the State charged Defendant under Section 30-22-1(D) but used, with some customization, the alternative from the UJI that corresponds to Section 30-22-1(C). As a result, the jury was not instructed on the "resisting or abusing" elements of Section 30-22-1(D) that differentiate the offense from the other forms of resisting, evading, or obstructing an officer. *See generally Jimenez*, 2017-NMCA-039, ¶¶ 25-29, 32-40. By using an instruction roughly modeled on Section 30-22-1(C), the State sought to obtain a conviction for a crime that it had not charged, *see Jimenez*, 2017-NMCA-039, ¶ 27, and the district court consequently erred by instructing the jury on an offense that "the State did not prosecute and Defendant did not defend against[.]" *State v. Radosevich*, 2016-NMCA-060, ¶ 10, 376 P.3d 871, *rev'd on other grounds*, 2018-NMSC-028, 419 P.3d 176; *see Grubb*, 2020-NMCA-003, ¶ 9. To preserve Defendant's right to due process, we accept the State's concession that Defendant's conviction was the result of fundamental error.

**IV.    Defendant Is Not Entitled to a New Trial on the Charge of Battery Against a Household Member**

{28} Defendant argues that the district court abused its discretion by admitting Officer Gutierrez's testimony that the 911 dispatcher told him that someone on the 911 call said, "You're here to kill me; why are you here to kill me?" Defendant contends that this error requires reversal of his conviction for battery against a household member. We disagree.

{29} "We review the district court's evidentiary rulings for an abuse of discretion." *State v. Garnenez*, 2015-NMCA-022, ¶ 29, 344 P.3d 1054. "An abuse of discretion occurs when [a] ruling is clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). Even when a defendant shows that the district court has abused its discretion, the improper admission of evidence "is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. "Non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936 (alteration, emphasis, internal quotation marks, and citation omitted). In assessing the potential impact of an error on the outcome below, we review "all of the circumstances surrounding the error[,]" including "the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the

27

prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *Id.* ¶ 23 (internal quotation marks and citation omitted).

{30} Defendant objected to the testimony on confrontation clause and hearsay grounds at trial, and the district court overruled the objection. On appeal, Defendant only challenges the admissibility of the testimony under our hearsay rules and we therefore do not address the constitutional question. Assuming without deciding that the testimony was inadmissible hearsay, we conclude that there is no reasonable probability that its admission affected the verdict. The challenged testimony was cumulative of Officer Gutierrez's description of the 911 call in the footage from his lapel camera that was admitted into evidence without objection. And, although the State argued in closing that Victim's statements on the 911 call demonstrated that Victim believed Defendant was going to kill her, it did not otherwise emphasize the statements, which had little importance to the State's case as to battery against a household member. Victim's statements on the 911 call, though cumulative, were probative of the charge that Defendant committed aggravated assault against a household member with intent to commit a violent felony. Notably, however, the jury acquitted Defendant of that crime, indicating that the admission of the challenged testimony did not affect the verdict.

{31} Because there was ample evidence, apart from the challenged testimony, of Defendant's guilt as to battery against a household member, the State had no reason

28

to emphasize the idea that someone on the 911 call had said, "You're here to kill me; why are you here to kill me?" The jury was instructed, consistent with UJI 14-390 NMRA, that a guilty verdict for battery against a household member required proof beyond a reasonable doubt that (1) "[D]efendant intentionally touched or applied force to [Victim] . . . by pushing her"; (2) "[D]efendant acted in a rude, insolent, or angry manner"; (3) "[Victim] . . . was a household member of [D]efendant"; and (4) "[t]his happened in New Mexico on or about the 2nd day of August[] 2016." The only elements of the jury instruction of which the challenged testimony could be probative are the requirements that Defendant acted "intentionally" and "in a rude, insolent, or angry manner." However, the challenged testimony is not nearly as probative of those elements as the other evidence on which the State relied in making its case that Defendant committed battery against a household member. In his testimony, Defendant *admitted* having pushed Victim because of an argument. Victim testified that Defendant choked, dragged, smacked, and punched her, "really hard." And she testified that Defendant repeatedly threatened to kill her and burn her body during the attack. Hence, the challenged testimony was cumulative of Victim's testimony about Defendant's mental state and the nature of his conduct toward her. We thus conclude that there is no reasonable probability that the admission of Officer Gutierrez's testimony about the 911 call affected the verdict when the jury heard from Defendant himself that he pushed Victim during an argument and from Victim

29

herself that Defendant beat and threatened to kill her. Accordingly, we hold that the admission of Officer Gutierrez's testimony about the 911 call, if erroneous, was harmless and affirm Defendant's conviction for battery against a household member.

**CONCLUSION**

{32} We affirm Defendant's convictions for aggravated assault upon a peace officer and battery against a household member. We reverse his conviction for resisting or abusing a peace officer and remand to the district court for a retrial on that charge.

{33} **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Judge**


_____
**BRIANA H. ZAMORA, Judge**