This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38330**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**ZACHERIAH ALEXANDER PAGANO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James L. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}**     Following a jury trial, Zacheriah Alexander Pagano (Defendant) was convicted of kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003), and unlawful taking of a motor vehicle, contrary to NMSA 1978, Section 30-16D-1 (2009). On appeal, Defendant argues that (1) insufficient evidence supports his conviction for kidnapping, (2) his convictions for kidnapping and unlawful taking of a motor vehicle violate double jeopardy, and (3) fundamental error occurred when the district court failed to instruct the jury concerning the mens rea required for unlawful taking of a motor vehicle. Unpersuaded by Defendant's arguments, we affirm.

**BACKGROUND**

**{2}** Because this is an unpublished, memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

**DISCUSSION**

**I.      Sufficient Evidence Supports Defendant's Conviction for Kidnapping**

**{3}** Defendant maintains that insufficient evidence supports his kidnapping conviction because the restraint of Victim was incidental to and only in furtherance of the crime of simple robbery. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). Under this test, "we view the evidence in the light most favorable to the state, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Ledbetter*, 2020-NMCA-046, ¶ 6, 472 P.3d 1287 (alteration, internal quotation marks, and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{4}** At trial, the jury was instructed that, to find Defendant guilty of kidnapping, the State had to prove each of the following elements beyond a reasonable doubt:

1. [D]efendant restrained or confined [Victim] by force or intimidation;

2. [D]efendant intended to make [Victim] move from one room to another against [Victim's] will for the purpose of making [Victim] retrieve her purse, for the purpose of Defendant taking it;

3. The restraint or confinement of [Victim] was not slight, inconsequential, or merely incidental to the commission of [a]rmed [r]obbery;

4. This happened in New Mexico on or about the 23rd day of October, 2016.

*See* UJI 14-403A NMRA (2015).

**{5}** Defendant argues that the restraint or movement of Victim (grabbing Victim's arm and moving her from one room to another) was incidental to robbery. Overall, we understand Defendant only to challenge the third element of the kidnapping instruction,

and we limit our analysis accordingly.[1] In evaluating whether force is incidental, "we must determine whether the force used during the other crime, in this case [robbery], is the only evidence of force supporting both the kidnapping conviction and the separate offense." *State v. Dominguez*, 2014-NMCA-064, ¶ 12, 327 P.3d 1092 (emphasis omitted). In other words, the restraint used to support Victim's kidnapping must be separate from the force used to accomplish the charge of robbery. *See id.* ¶ 10 ("The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime."). The facts of this case support that the restraint used to accomplish the kidnapping (i.e., Defendant grabbing Victim by the arm and walking her to the bedroom) was separate and distinct from the robbery because, once they got to the bedroom, the kidnapping was complete. Defendant then let go of Victim's arm and used additional force to commit the robbery (i.e., after Victim retrieved the keys, Defendant grabbed the keys and Victim's purse; Victim then held onto her purse; and Defendant shoved Victim off and ran). Viewing the facts in the light most favorable to the verdict, and in light of our Supreme Court's recent elucidation of incidental restraint, we conclude there was sufficient evidence of restraint, independent of the force used during the robbery, to support Defendant's kidnapping conviction.[2]

## II.    Defendant's Convictions for Kidnapping and Unlawful Taking of a Motor Vehicle Do Not Violate Double Jeopardy

{6}    Defendant argues that under the facts of this case, his convictions for kidnapping and unlawful taking of a motor vehicle violate his right to be free from double jeopardy.

---

1Although Defendant mentions "held to service" (the second kidnapping element) in his challenge to his kidnapping conviction, he does so only in the context of his argument that the restraint or movement of Victim was merely incidental to the robbery. We, therefore, do not separately analyze the "held to service" element. *See* § 30-4-1(A)(3).

2Defendant, principally relying on *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238, invites us to apply the various tests described in that opinion to determine whether the restraint in this case was incidental to the robbery and therefore not punishable as kidnapping. Where, as here, there is an identifiable point at which the kidnapping is completed, and the defendant utilizes additional force to commit another crime, our Supreme Court appears to have circumscribed *Trujillo*'s reach. *See State v. Sena*, 2020-NMSC-011, ¶ 39, 470 P.3d 227 (identifying the point at which the kidnapping was complete; concluding that any restraint, beyond that point, incidental to the sexual assaults was "separate and distinct from the restraint that [the d]efendant used to complete the kidnapping"; and holding, under these circumstances, that *Trujillo* was inapplicable). In light of *Sena*, the extent to which *Trujillo* remains viable under circumstances like those in this case is doubtful. Furthermore, this case is unlike *Trujillo* in at least two respects. First, unlike in *Trujillo*, the jury in this case was instructed that, to find Defendant guilty of kidnapping, they must find beyond a reasonable doubt that "[t]he restraint or confinement of [Victim] was not slight, inconsequential, or *merely incidental* to the commission of [a]rmed [r]obbery." (Emphasis added.) While the instruction referred to armed robbery and Defendant's argument here relates to simple robbery, Defendant makes no claim that the jury instruction was inadequate to convey the concept of incidental restraint; further, there was only one robbery alleged and instructed, although the jury apparently believed no firearm was used. Second, unlike in *Trujillo*, Defendant here was not convicted of the offense he alleges was merely incidental to kidnapping (i.e., simple robbery). While he asserts that "kidnapping can *arguably* be incidental to another crime based on conduct for that other crime without an accompanying conviction for that other crime," he fails to develop any argument in support. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts do not address unclear or undeveloped arguments).

As relevant here, the Double Jeopardy Clause protects against multiple punishments for the same offense. *See Swafford v. State*, 1991-NMSC-043, ¶¶ 7-8, 112 N.M. 3, 810 P.2d 1223; *see also* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises what is known as a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289.

**{7}**    "In double-description cases . . . [our] Supreme Court has fashioned a double jeopardy analysis in which the polestar guiding courts is the Legislature's intent to authorize multiple punishments for the same offense." *State v. Silvas*, 2015-NMSC-006, ¶ 8, 343 P.3d 616 (alterations, internal quotation marks, and citation omitted). We apply the two-part test set forth in *Swafford* and first ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." 1991-NMSC-043, ¶ 25. "When determining whether [a d]efendant's conduct was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). "[We] may consider as indicia of distinctness the separation of time or physical distance between the illegal acts, the quality and nature of the individual acts, and the objectives and results of each act." *State v. Mora*, 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted). Only "[i]f [the defendant's conduct] is unitary, [do] we [then] consider whether it was the Legislature's intent to punish the two crimes separately." *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747.

**{8}**    Consequently, we must first determine whether Defendant's conduct was unitary. *See Swafford*, 1991-NMSC-043, ¶ 25. Here, although the incident giving rise to charges of kidnapping and unlawful taking of a motor vehicle occurred within a relatively short period of time, the kidnapping of Victim was completed prior to Defendant taking Victim's motor vehicle. As discussed, Defendant's kidnapping of Victim was completed when Defendant restrained or confined Victim, by grabbing her arm and going to the bedroom, with the intent to take Victim's purse. *See Dominguez*, 2014-NMCA-064, ¶ 10 ("The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime."). This restraint occurred before Defendant took possession of Victim's vehicle and even before Defendant took Victim's purse and car keys. *See Sena*, 2020-NMSC-011, ¶ 46 ("Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime."); *DeGraff*, 2006-NMSC-011, ¶ 27 ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed.").

**{9}**    We also consider whether the object and result of the acts can be distinguished. *Silvas*, 2015-NMSC-006, ¶ 10. At trial, as to the charge of kidnapping, the jury was instructed that to find Defendant guilty of kidnapping, the State had to prove, in relevant part, that "[D]efendant intended to make [Victim] move from one room to another

against [Victim's] will for the purpose of making [Victim] retrieve her purse, for the purpose of Defendant taking it." Whereas, to find Defendant guilty of unlawful taking of a motor vehicle, the jury was instructed that the State had to prove that "[D]efendant took [Victim's vehicle] without [her] consent."

**{10}** Looking at the acts of Defendant in light of what the jury was required to find to convict Defendant for each of these crimes, we conclude that Defendant's goals and objectives for each of these crimes were separate and distinct. *See DeGraff*, 2006-NMSC-011, ¶ 27. In committing the crime of kidnapping, Defendant's objective was to gain control of Victim so that he could compel her to give him her purse and car keys. Whereas in committing the crime of unlawful taking of Victim's vehicle, Defendant's objective was to take Victim's vehicle without her permission, and to use it to flee from the scene.

**{11}** Therefore, we conclude Defendant's conduct was not unitary, and, accordingly, we do not proceed with the second step of the *Swafford* analysis. Thus, Defendant's convictions for kidnapping and unlawful taking of a motor vehicle do not violate his right to be free from double jeopardy.

### III.  The District Court's Failure to Instruct the Jury as to the Mens Rea for Unlawful Taking of a Motor Vehicle Did Not Result in Fundamental Error

**{12}** Finally, Defendant argues that the district court failed to instruct the jury as to the mens rea for unlawful taking of a motor vehicle. Defendant did not object to this omission at trial, therefore, we review this alleged error in the jury instructions for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Determining fundamental error is a two-step inquiry: first, we determine whether error occurred; next, we determine whether this error is fundamental. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448.

**{13}** As for our initial inquiry, we conclude the instruction was erroneous because it omitted the requisite mens rea. *See State v. Bachicha*, 1972-NMCA-141, ¶ 4, 84 N.M. 397, 503 P.2d 1175 ("Criminal intent is an essential element of unlawful taking of a vehicle." (citation omitted)). The statute prohibiting the unlawful taking of a motor vehicle states that "[u]nlawful taking of a vehicle or motor vehicle consists of a person taking any vehicle or motor vehicle as defined by the Motor Vehicle Code . . . *intentionally* and without consent of the owner." Section 30-16D-1(A) (emphasis added). The jury instruction for unlawful taking of a motor vehicle, UJI 14-1660 NMRA, does not mention intent because the mens rea element of unlawful taking of a motor vehicle is covered by the general criminal intent instruction in UJI 14-141 NMRA. *See* UJI 14-1660 comm. cmt. ("The 'intentional' element of this crime was not included in this instruction because it would duplicate UJI 14-141."). However, in this case, the jury was not given the general criminal intent instruction in UJI 14-141; this resulted in the jury never being instructed regarding the mens rea for unlawful taking of a motor vehicle, which was error.

**{14}**     Next, our fundamental error analysis requires us to "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted). "[A]n appellate court may affirm a conviction . . . if the jury, having considered the parties' legal and factual presentations and returned a guilty verdict on the given instructions, undoubtedly would have found the essential element if properly instructed." *Ocon*, 2021-NMCA-032, ¶ 12. "That conclusion is possible only where proof of the omitted element is so strong that no rational jury could have failed to find that element." *Id.* "[I]rrespective of the strength of the [s]tate's case, a reviewing court cannot conclude that the jury undoubtedly would have found an omitted element when that element was 'disputed' or 'in issue' at trial." *Id.* "Reversal is mandatory regardless of a defendant's trial strategy if any evidence or suggestion in the facts, however slight would have permitted a rational jury to conclude that the [s]tate failed to meet its burden to prove the omitted element beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{15}**     We cannot conclude that the failure to instruct the jury of the mens rea required to commit the crime of unlawful taking of a motor vehicle was fundamental error for two reasons. First, the jury undoubtedly would have found the element of intent if it had been properly instructed. *Cf. State v. Ancira*, ___-NMCA-___, ¶ 31, ___ P.3d ___ (No. A-1-CA-38173, Mar. 23, 2022) (concluding that "the circumstantial evidence [of knowledge] . . . [was] so strong that no rational jury . . . could have found otherwise"). The record is replete with overwhelming evidence of Defendant intentionally taking Victim's vehicle. When Defendant asked Victim where the keys to her vehicle were, Victim told Defendant that they were in her bedroom, and he grabbed her arm and took her from the living room to her bedroom. Once in Victim's bedroom, Defendant grabbed Victim's car keys and purse. Even though Victim and her father-in-law tried to prevent Defendant from taking the purse and the keys to her vehicle, Defendant resisted them, fled from the interior of Victim's home to the garage where Victim's vehicle was parked, got into the vehicle, used the car keys to start its engine and drove away from Victim's home, taking her purse with him. From these facts, the jury undoubtedly would have found that Defendant intended to take Victim's vehicle had it been properly instructed. *See Ancira*, ___-NMCA-___, ¶ 31.

**{16}**     Second, the issue of intent was never "disputed" or placed "in issue" at trial. *See Ocon*, 2021-NMCA-032, ¶ 12. A review of the record reveals that neither the State nor Defendant offered any testimony, evidence, or arguments during trial disputing or placing in issue Defendant's intent to take Victim's vehicle. Significantly, Defendant states in his brief in chief that when he grabbed Victim's arm and walked her to her bedroom, he did so *in order to take her keys and steal her car*.

**{17}**     Thus, because the jury undoubtedly would have found the element of intent if it had been properly instructed and the issue of intent was never "disputed" or placed "in issue" at trial, the district court's error of omitting the intent element does not rise to the level of fundamental error, and we accordingly affirm Defendant's conviction for unlawful

taking of a motor vehicle. *See Ocon*, 2021-NMCA-032, ¶ 12; *Ancira*, \_\_\_-NMCA-\_\_\_, ¶ 31.

**CONCLUSION**

**{18}** For the reasons stated above, we affirm Defendant's convictions for kidnapping and unlawful taking of a motor vehicle.

**{19}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JACQUELINE R. MEDINA, Judge**