The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **March 23, 2022**

**No. A-1-CA-38173**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**PRESCILIANO C. ANCIRA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BACA, Judge.**

{1}    Following a jury trial, Presciliano Ancira (Defendant) was found guilty of breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981); attempt to commit breaking and entering, contrary to Section 30-14-8 and NMSA 1978, Section 30-28-1 (1963); criminal trespass (unposted) contrary to NMSA 1978, Section 30-14-1(B) (1995); and resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981). In this appeal, Defendant argues that (1) the State's amendment of the criminal trespass charge during trial to change the address of the location of the alleged trespass amounts to a new charge in violation of Rule 5-204(A) NMRA; (2) the uniform jury instruction (UJI) for criminal trespass, UJI 14-1402 NMRA, does not accurately describe the elements of the offense, as set forth in Section 30-14-1(B), and that fundamental error occurred when the district court instructed the jury based on UJI 14-1402; (3) the jury instructions for breaking and entering and attempted breaking and entering suffered from fundamental error; (4) the State invited the jury to consider the consequences of its verdict by arguing that Defendant's charges were "serious"; and (5) insufficient evidence supported his conviction for breaking and entering.

{2}    We agree that the amendment of the criminal trespass charge during trial amounted to a new charge in violation of Rule 5-204(A) and reverse Defendant's

conviction for criminal trespass on that ground. We also hold that UJI 14-1402 "should have known" language is erroneous, and therefore suggest that UJI 14-1402 be modified to conform to the statutory language. Unpersuaded by Defendant's remaining arguments, we affirm.

**BACKGROUND**

{3}    On the morning of August 15, 2018, Defendant reached through the dog door on the back door to Mr. Johnnie Noblitt's home. Defendant was attempting to unlock the deadbolt of the back door. Mr. Noblitt, who was home, kicked Defendant's arm, and yelled at Defendant. Defendant pulled his arm out from the dog door and ran. Mr. Noblitt opened the door and saw Defendant running away. Mr. Noblitt saw Defendant jump into his neighbor Randy Duran's backyard over a five-foot-high brick wall that separated their back yards. Mr. Noblitt subsequently called the police.

{4}    Law enforcement responded, and Officer Martin saw Defendant running through an alley but lost him. Defendant was subsequently located by Mr. Alberto Muniz, who found Defendant passed out and snoring in his bathtub when he got home from work. Mr. Muniz stated that it looked as if his bathroom had been ransacked, and the screen to his bathroom window was on the floor as if someone pushed it in from outside the window. Mr. Muniz called the police, and Defendant was arrested.

{5} Defendant testified that after he ran from the police he entered the home of Mr. Muniz through an unlocked back door. Defendant stated that he went into this yard because it had a cinderblock wall. Defendant denied entering Mr. Muniz's home through the bathroom window. He testified that he would not have gone through the window because of its height and because he was afraid of being seen. However, Mr. Muniz testified that he locked the back door before leaving for work, and that the bathroom window had been forced and broken.

{6} Defendant testified that, after being sober for fourteen months, he smoked methamphetamine on the morning of the incident. After smoking, Defendant became very paranoid and, in his mind, he was trying to escape from people who wanted to rob him. Defendant stated that he was "terrified" and that he was attempting to get somewhere safe by breaking into Mr. Noblitt's home.

{7} Defendant was convicted at trial of breaking and entering into the home of Mr. Muniz; attempted breaking and entering for sticking his arm through Mr. Noblitt's dog door; criminal trespass for the unauthorized entry of Mr. Duran's back yard; and resisting, evading, or obstructing an officer for running from Officer Mitchell, an Alamogordo Police Officer. This appeal followed.

**DISCUSSION**

**I.     Amendment of the Criminal Trespass Charge Amounted to a New Charge Under Rule 5-204(A)**

**{8}** Defendant argues that amending the trespassing charge by changing the address of the location of the alleged trespass from 1000 Dewey to 1002 Dewey amounts to a new charge in violation of Rule 5-204(A). We agree.

**{9}** We review the application of Rule 5-204 de novo. *State v. Stevens*, 2014-NMSC-011, ¶ 49, 323 P.3d 901. Rule 5-204(A) states, in pertinent part, that "[t]he court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any such defect, error, omission or repugnancy if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

**{10}** Rule 5-204(A) allows a court to amend an information prior to the verdict to correct a defect or error, "but [it] does not allow the [district] court to amend if there is an additional or different offense charged." *State v. Roman*, 1998-NMCA-132, ¶¶ 9, 11, 125 N.M. 688, 964 P.2d 852. As we explained in *Roman*, the distinction lies in the difference between an "amendment to an information" and an "amended information." *Id.* ¶ 12 (internal quotation marks omitted). "An amendment to an information occurs when an otherwise adequate information is supplemented. An amendment to an information does not include the addition of a new charge. An amended information adds a new or different charge. It acts as the filing of a new instrument that supersedes the original." *Id.* (internal quotation marks and citations omitted).

**{11}** The State contends here that there was no new charge added, that instead it merely corrected a typographical error in the address where the trespass occurred. The State relies on *State v. Lucero*, 1968-NMCA-021, ¶¶ 6-7, 79 N.M. 131, 440 P.2d 806, where a change in the address given was held to be the correction of an error that did not prejudice the defendant, and was therefore permissible. We are not persuaded. There are important differences between a case like *Lucero*, where the defendant was indicted on a single charge of burglary, *id.* ¶ 1, and this case. In that case, a mistake in the address burglarized was found to be a typographical error, which did not prejudice the defendant. *Id.* ¶¶ 6-7. In that case, the defendant was able to identify the basis of the accusation from the date and the charge and recognize that the address was a simple error. His trial preparation was not affected. *See id.*

**{12}** In this case, however, Defendant was charged with the offense of breaking and entering at the address identified on the criminal information. The alleged "typo" correctly informed Defendant that he also faced the lesser included offense of trespassing at that same address if the jury acquitted him of breaking and entering. There was no reason for Defendant to doubt the accuracy of the address in this case. Defendant was not on notice prior to trial under these facts that the State actually intended to charge a separate count of trespass at a different location. We therefore conclude that the State sought to add a new charge after the close of the evidence.

{13}     The record shows that Defendant was prejudiced by the addition of this new charge without adequate notice. *See Roman*, 1998-NMCA-132, ¶ 13 (noting that post-evidence amendments are particularly prejudicial because they add a new charge without giving a criminal defendant sufficient notice). The post-evidence amendment that occurred here is particularly prejudicial because, believing trespass was charged only as a lesser included offense of breaking and entering, Defendant focused his defense on encouraging the jury to find trespass instead of breaking and entering. Defendant mounted no defense to the new charge of trespassing and, indeed, his counsel did not interview the key witness on that charge. Counsel almost certainly would have done so had he been aware the witness was central to an additional charge. Defense counsel was not on notice when he cross-examined the State's newly listed witness that he was being called by the State to testify as the victim of an additional charge of trespass. Under these circumstances, particularly where the two addresses, 1000 and 1002 Dewey, were both locations where Defendant had been during the course of the events leading to the charges filed in this case, we conclude Defendant was prejudiced by the lack of adequate notice of the amended charge against him. *See State v. Armijo*, 1977-NMCA-070, ¶ 25, 90 N.M. 614, 566 P.2d 1152 ("To permit the jury to convict on the basis of action resulting in personal injury, by adding this charge after the evidence was concluded in a trial where personal injury was not in issue, is prejudice."). Because we conclude

6

that the amendment to the criminal trespass charge violated Rule 5-204(A), we reverse Defendant's conviction as to that count.

**II.    UJI 14-1402 Does Not Accurately Describe the Mens Rea for Criminal Trespass**

{14}    Defendant argues that his conviction for criminal trespass should also be reversed, in the alternative, because there is a conflict in the mens rea requirements of the criminal trespass statute, Section 30-14-1(B) and UJI 14-1402.

{15}    Defendant argues that the UJI utilizes a lower mens rea requirement than what is statutorily mandated. He points out that the criminal trespass statute requires that a person committing criminal trespass "knowingly enter[] or remain[] upon the unposted lands of another *knowing* that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof," § 30-14-1(B), whereas UJI 14-1402 requires only that "[t]he defendant knew *or should have known* that permission to enter . . . had been denied." (Emphasis added.) Thus, he argues, UJI 14-1402 applies a lower mens rea requirement than that required by Section 30-14-1(B).

{16}    The "Court of Appeals has authority to question uniform jury instructions in cases in which the instruction has not been challenged previously and to amend, modify, or abolish the instruction if it is erroneous." *State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175. Uniform jury "[i]nstructions are sufficient if, considered as a whole, they fairly present the issues and the applicable law." *State*

7

*v. Rhea*, 1974-NMCA-030, ¶ 9, 86 N.M. 291, 523 P.2d 26. "When a jury instruction is facially erroneous, as when it directs the jury to find guilt based upon a misstatement of the law, a finding of juror misdirection is unavoidable." *State v. Dowling*, 2011-NMSC-016, ¶ 17, 150 N.M. 110, 257 P.3d 930.

{17}     Our Supreme Court had the opportunity to review the criminal trespass statute in *State v. Merhege*, 2017-NMSC-016, 394 P.3d 955. However, the conflict raised by Defendant was not directly challenged. The *Merhege* Court noted that the defendant "[did] not provide [the Court] with an opportunity to examine the propriety of the model instruction" because the defendant did not challenge the "knew or should have known" language in the model jury instruction, nor did the defendant "argue that the statutory mens rea of 'knowing' requires actual knowledge." *Id.* ¶ 10 n.2 (internal quotation marks and citation omitted). Defendant urges us to address this discrepancy now. Although not essential to our decision given our resolution of Defendant's claim that criminal trespass was improperly charged, we address this question because of its importance and because it will likely be repeated, given the reliance of our trial courts on the UJI for guidance.

{18}     We begin with the plain language of the statute, which is "[t]he primary indicator of legislative intent." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863. Section 30-14-1(B) requires a finding beyond a reasonable doubt that a defendant "*knowingly* enter[s] or remain[s] upon the unposted lands of another

8

*knowing* that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." (Emphasis added.) However, the jury instruction for criminal trespass, UJI 14-1402, which is based upon Section 30-14-1[1] and which was given to the jury in this case, requires a finding beyond a reasonable doubt that "[D]efendant *knew or should have known* that permission to enter [the land] had been denied." UJI 14-1402 (emphasis added). "[S]hould have known" adds civil negligence as an alternative to the statute's requirement of actual knowledge. *State v. Consaul*, 2014-NMSC-030, ¶ 39, 332 P.3d 850 (internal quotation marks omitted); *see id.* (noting that the close association between the phrase "knew or should have known" and principles of civil negligence (internal quotation marks omitted)). It allows the jury to convict of trespass based on its belief that a reasonable person would have understood that access was barred. However, New Mexico law requires proof beyond a reasonable doubt of actual knowledge that permission to enter the land had been denied.

{19}   Our New Mexico Supreme Court's decision in *State v. Suazo*, 2017-NMSC-011, 390 P.3d 674, guides our analysis here. In *Suazo*, the state tendered a modified jury instruction for second-degree murder, which "inserted 'knew or should have known' in place of the word 'knew,' but was otherwise consistent with the model

---

[1]*See* cross-references in annotations to UJI 14-1402 referring to Section 30-14-1(A) and (B).

instruction." *Id.* ¶ 14. The statute at issue in *Suazo*, NMSA 1978, § 30-2-1(B) (1994), read: "Unless he is acting upon sufficient provocation . . . a person who kills another human being without lawful justification or excuse commits murder in the second degree if . . . he [or she] *knows* that such acts create a strong probability of death." *Suazo*, 2017-NMSC-011, ¶ 16 (internal quotation marks and citation omitted). The Court determined that the plain language of Section 30-2-1(B) requires that the defendant "possess knowledge of the probable consequences of his or her acts." *Suazo*, 2017-NMSC-011, ¶ 16. Therefore, the Court held that "the instruction . . . misstated the mens rea element of second-degree murder, and it was therefore error for the district court to provide this instruction to the jury." *Id.* ¶ 25.

{20}    Just as in *Suazo*, the UJI here conflicts with the plain language of Section 30-14-1(B), because the UJI uses "knew or should have known" as its mens rea requirement, while Section 30-14-1(B) requires actual knowledge. *Compare* UJI 14-1402, *with* § 30-14-1(B). Due to this misstatement of the mens rea required by Section 30-14-1(B) in UJI 14-1402, the jury in this case was instructed that it could find Defendant guilty of criminal trespass if it found that Defendant should have known that permission to enter had been denied. As pointed out above, this instruction was not an accurate rendition of the law. *See* Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."); *State v. Osborne*, 1991-NMSC-032, ¶ 10, 111

10

N.M. 654, 808 P.2d 624 (treating Rule 5-608(A) as requiring the trial court to instruct the jury on all essential elements of a crime, even when the relevant UJI leaves out an element). Because we hold that UJI 14-1402's "should have known" language is erroneous, we therefore suggest that UJI 14-1402 be modified to conform to the statutory language. *See Wilson*, 1994-NMSC-009, ¶ 6.

### III. Sufficient Evidence Supports Defendant's Breaking and Entering Conviction

{21} Defendant next argues that insufficient evidence supported his conviction for breaking and entering. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). Under this test, "we view the evidence in the light most favorable to the state, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Ledbetter*, 2020-NMCA-046, ¶ 6, 472 P.3d 1287 (alteration, internal quotation marks, and citation omitted). "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted). "Jury

instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{22} At trial, the jury was instructed that to find Defendant guilty of breaking and entering, the State was required to prove the following elements beyond a reasonable doubt:

> 1.    [D]efendant entered 1109 Cauthen, Alamogordo, NM without permission;
>
> 2.    The entry was obtained by the dismantling of the north side bathroom window.

{23} Defendant argues that the State did not present sufficient evidence that he dismantled the bathroom window. We disagree. First, Mr. Muniz testified that he always locks his back door, front door, and bathroom window when he leaves the house. Second, when Mr. Muniz got home, he found Defendant asleep in his bathroom. Third, Mr. Muniz testified that the bathroom window was wide open, the crank that opens the bathroom window was broken, and the screen to this window was on the floor inside his bathroom, as if someone pushed it inside from outside the window. Fourth, he saw footprints outside of the bathroom window. Finally, he discovered that his bathroom had been ransacked and his belongings were scattered about the floor of the bathroom, but nothing else in the house was disturbed. Together, these facts provide substantial evidence from which the jury could have

12

concluded that Defendant broke into the house through the bathroom window. While Defendant argues contrary evidence supports reversal, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

## IV. The Jury Instructions for Breaking and Entering and Attempted Breaking and Entering Did Not Suffer From Fundamental Error

{24}  Defendant challenges the breaking and entering and attempted breaking and entering instructions given to the jury because the instructions omitted knowledge that Defendant does not have permission to enter the dwelling or structure, which Defendant contends is an essential element of the crime. Defendant concedes that he did not object to the challenged instructions at trial; therefore, we review these instructions for fundamental error. *See Osborne*, 1991-NMSC-032, ¶¶ 35, 38 (explaining that the failure to instruct the jury on the essential elements of an offense may constitute fundamental error, even if the defendant failed to object to an inadequate instruction). Determining fundamental error is a two-step inquiry: (1) we determine whether error occurred; and (2) we determine whether this error is fundamental. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. To determine whether error occurred, we ask "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Barber*, 2004-NMSC-

019, ¶ 19, 135 N.M. 621, 92 P.3d 633. Jury instructions cause confusion or misdirection when, "through omission or misstatement," they do not provide "an accurate rendition" of the essential elements of the law. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{25}     If we determine that a reasonable juror would have been confused or misdirected by the instructions given, our fundamental error analysis requires us to "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted). "If such a miscarriage of justice exists, we deem it fundamental error." *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306.

{26}     "[A]n appellate court may affirm a conviction notwithstanding the absence of an implicit jury finding on an omitted element if the jury, having considered the parties' legal and factual presentations and returned a guilty verdict on the given instructions, undoubtedly would have found the essential element if properly instructed." *Ocon*, 2021-NMCA-032, ¶ 12. "That conclusion is possible only where proof of the omitted element is so strong that no rational jury could have failed to find that element." *Id.* "[I]rrespective of the strength of the [s]tate's case, a reviewing court cannot conclude that the jury undoubtedly would have found an omitted

14

element when that element was 'disputed' or 'in issue' at trial." *Id.* "Reversal is mandatory regardless of a defendant's trial strategy if 'any evidence or suggestion in the facts, however slight' would have permitted a rational jury to conclude that the [s]tate failed to meet its burden to prove the omitted element beyond a reasonable doubt." *Id.* (quoting *State v. Orosco*, 1992-NMSC-006, ¶ 10, 113 N.M. 780, 833 P.2d 1146).

## A. The Breaking and Entering Instructions Did Suffer From Error, but This Error Was Not Fundamental

{27}    Relying on *State v. Contreras*, 2007-NMCA-119, ¶ 17, 142 N.M. 518, 167 P.3d 966, Defendant argues that the breaking and entering instructions submitted to the jury omitted the requirement that a defendant must have actual knowledge that he or she does not have permission to enter the dwelling or structure. We agree.

{28}    At trial, the jury was instructed, based on UJI 14-1410 NMRA, that to find Defendant guilty of breaking and entering, the State was required to prove the following elements beyond a reasonable doubt:

      1.    [D]efendant *entered* 1109 Cauthen, Alamogordo, NM *without permission*;

      2.    The entry was obtained by the dismantling of the north side bathroom window.

{29}    New Mexico's statute for breaking and entering into a dwelling or structure describes three elements: (1) entering, (2) without permission, (3) by fraud,

15

deception, breaking or dismantling any part of the dwelling or structure. *See* § 30-14-8(A). We have previously held that "the mental state which accompanies the 'without permission' element of breaking and entering is *knowledge of* the lack of permission." *Contreras*, 2007-NMCA-119, ¶ 17 (emphasis added). Therefore, the State was required to prove that Defendant had actual knowledge that he did not have permission to enter 1109 Cauthen, Alamogordo, New Mexico, the home of Mr. Muniz.

{30}    Had Defendant requested such an instruction, it would have been appropriate for the district court to include it. Because Defendant made no objection to the jury instruction given, however, we must now decide whether the omission of this element was fundamental error requiring reversal. *See Sandoval*, 2011-NMSC-022, ¶ 20.

{31}    We conclude that this error did not amount to fundamental error requiring reversal because the element was not "disputed" or "in issue" at trial, *Ocon*, 2021-NMCA-032, ¶ 12 (internal quotation marks omitted), and because the circumstantial evidence that Defendant knew he did not have permission to enter the home of Mr. Muniz is so strong that no rational jury, having found the other elements of breaking and entering, could have found otherwise. *See id.* The jury's verdict included findings, beyond a reasonable doubt, that Defendant had entered a locked house by prying open and breaking the mechanism on a locked window located above his

16

head. It is simply not reasonable to conclude that Defendant broke in through the bathroom window and that he thought he had permission to do so. Neither the evidence nor the arguments presented by the parties suggested to the slightest extent that Defendant forcibly entered believing that he had permission to do so. Having rejected Defendant's defense that he walked in through an unlocked door, a reasonable jury could not have concluded Defendant believed he had permission to enter. Accordingly, we hold that the knowledge element was not disputed at trial and that, based on the strength of the evidence, no rational jury, having found that Defendant broke in through the bathroom window, could have failed to find that Defendant knew that he did not have permission to enter the home of Mr. Muniz. Therefore, we affirm Defendant's conviction for breaking and entering.

**B.      Though Erroneous, the Attempted Breaking and Entering Instructions Did Not Suffer From Fundamental Error**

{32}      Defendant was convicted of attempted breaking and entering based on his attempt to enter Mr. Noblitt's house by reaching through a dog door to unlock the back door. Defendant argues that the attempted breaking and entering instructions given to the jury are flawed, for the identical reason that the instruction for breaking and entering instruction are flawed. To find Defendant guilty of attempted breaking and entering, the jury was instructed, pursuant to UJI 14-2801 NMRA, that the State was required to prove the following elements beyond a reasonable doubt:

17

       1.      [D]efendant intended to commit the crime of breaking and entering;

       2.      [D]efendant began to do an act which constituted a substantial part of the breaking and entering but failed to commit the breaking and entering.

{33}    Pursuant to the use notes of the attempted breaking and entering instruction, it was necessary for the district court to instruct the jury on the essential elements of breaking and entering, which included the essential element that Defendant had actual knowledge that he did not have permission to enter Mr. Noblitt's home to find him guilty.[2] *See Contreras*, 2007-NMCA-119, ¶ 17. Just as we concluded for the instruction of breaking and entering, we conclude that the essential element of knowledge was omitted from the instructions for attempted breaking and entering. This was error because the jury was given an incomplete instruction for this charge. *See Benally*, 2001-NMSC-033, ¶ 12.

{34}    While error occurred here, this error cannot be said to be fundamental because the element of knowledge was not "disputed" or "in issue" at trial and because the jury undoubtedly would have found the essential element of knowledge if properly instructed. *See Ocon*, 2021-NMCA-032, ¶ 12. No reasonable juror could conclude

---

[2]Use note 1 of UJI 14-2801 directs that "[t]he essential elements of the felony must be given immediately following this instruction, unless they are set out in an instruction dealing with the completed offense." Consequently, UJI 14-1410 (breaking and entering; essential elements) was also given to the jury as a part of this instruction. We concluded in the immediately preceding section of this opinion that UJI 14-1410 lacked the essential element of knowledge.

18

under the circumstances here that someone who attempted entry through a dog door and ran when the owner opened the door, believed he had permission to enter the house. This was not Defendant's defense, and neither party presented any evidence that suggested to even the slightest degree that Defendant did not know that he lacked permission to enter.

{35}    As to this charge, Mr. Noblitt testified that he saw Defendant try to get into his home by reaching through the dog door and attempt to unlock the deadbolt to the back door of his house. Mr. Noblitt stated that he kicked Defendant's arm, and yelled at Defendant, who was trying to get inside. Mr. Noblitt opened the door and Defendant ran away. Moreover, Defendant testified that he was attempting to get somewhere safe by breaking into Mr. Noblitt's home and admitted that he was the man Mr. Noblitt saw running away. From these facts, no rational jury could have failed to find that Defendant knew that he did not have permission to enter the home of Mr. Noblitt if they were properly instructed. *See id.* Just as we did with the instruction for breaking and entering and for the same reasons, we conclude that the issue of knowledge was not "disputed" or "in issue" at trial. *See id.* Accordingly, we hold that the error in the attempted breaking and entering jury instructions was not fundamental and we affirm.

## V.    The Instructions Did Not Encourage the Jury to Consider the Consequences of Its Verdict

{36}     Defendant finally argues that the State invited the jury to consider the consequences of its verdict by arguing that Defendant's charges were "serious." In New Mexico, it is well established that "a jury must not consider the consequences of its verdict." *State v. Brown*, 1997-NMSC-029, ¶ 12, 123 N.M. 413, 941 P.2d 494. "[T]he jury's function is to determine guilt or innocence, not to participate in the imposition of punishment." *State v. Evans*, 1973-NMCA-053, ¶ 6, 85 N.M. 47, 508 P.2d 1344.

{37}     Concerning this argument, Defendant first challenges the criminal trespass instruction. Since we have already addressed this instruction and reversed Defendant's conviction for criminal trespass, we do not address that instruction here. Next, Defendant challenges the instruction for attempted breaking and entering. For Defendant to be found guilty of this charge, the jury was instructed, in pertinent part, that

      1.    [D]efendant intended to commit the crime of breaking and entering;

      2.    [D]efendant began to do an act which constituted a substantial part of the breaking and entering but failed to commit the breaking and entering.

{38}     This instruction, Defendant argues, informed the jury of the seriousness of the offense and invited the jury to consider the consequences of its verdict. We are not persuaded. This instruction does not ask the jury to "participate in the imposition of punishment," and they do not discuss the nature or severity of the crime. *Brown*,

20

1997-NMSC-029, ¶ 14 (internal quotation marks and citation omitted). Rather, the instruction unambiguously and succinctly outline what the State must prove for the jury to find Defendant guilty of the crime of attempted breaking and entering. *See id.* ¶ 12.

{39}     Defendant cites *State ex rel. Schiff v. Madrid*, 1984-NMSC-047, 101 N.M. 153, 679 P.2d 821, in support of his argument. Defendant's reliance on *Madrid* is misplaced. In *Madrid*, the district court issued a modified instruction encouraging the jury to consider the consequences of its verdict on a firearm enhancement. *Id.* ¶ 5. This modification, our Supreme Court held, "was clearly an impermissible modification . . . expressly direct[ing] the jury to consider the mandatory firearm enhancement sentence, directly and blatantly contradicting the admonishment of UJI Crim. 50.06[3] that a jury is not to consider the consequences of its verdict." *Madrid*, 1984-NMSC-047, ¶ 7. In comparison to *Madrid*, the instruction for breaking and entering here does not, in any manner, encourage the jury to consider the consequences of its verdict.

{40}     We also "assume the jury followed the court's instruction." *State v. Stallings*, 1986-NMCA-086, ¶ 13, 104 N.M. 660, 725 P.2d 1228. Here, the district court gave a specific instruction to the jury that they must not concern themselves with the

---

[3]NMSA 1978, UJI Crim. 50.06 (Repl. Pamp. 1982) is now UJI 14-6007 NMRA.

21

consequences of their verdict. Therefore, we assume they did not concern themselves with the consequences of Defendant's verdict. *See id.* Accordingly, we affirm Defendant's conviction for attempted breaking and entering.

**CONCLUSION**

{41}    For the reasons stated above, we reverse Defendant's conviction for criminal trespass. Finding no error that requires the reversal of Defendant's remaining convictions, we affirm them.

{42}    **IT IS SO ORDERED.**


_____

**GERALD E. BACA, Judge**

**WE CONCUR:**


_____

**ZACHARY A. IVES, Judge**


_____

**JANE B. YOHALEM, Judge**